## VIRGIL CONKLING et al., Respondents, v. F. F. AUSTIN et al., Appellants.

### Kansas City Court of Appeals, April 3, 1905.

1. **ATTORNEY AND CLIENT: Real Estate Broker: Intermediary Vendee: Sharing Commission.** A real estate broker had a contract with his attorney whereby he was to pay him one-half of the sums recovered on a claim of the broker against an estate including his right to sell for the executors certain real estate. Under the advice and directions of the attorney the broker's right to sell the real estate at a fixed net price was recognized by the executors. The broker with the aid of another broker secured a sale to one F, which brought him a large commission. But prior to such sale his assistant agreed with him to take the land at the fixed net price, plus a certain small commission, but this contract was not perfected in any way until the sale to F and with the money secured from F. *Held*, the attorney was entitled to half of the large commission instead of the smaller since the assistant was a mere conduit to pass the title to F.

2. ———: **Lien: Statutory Construction.** The statute giving the attorney a lien for his fee gives such lien on the cause of action as well as on the verdict and the final judgment and attaches to the cause of action though the latter never reached a verdict and so where an attorney by contract was entitled to one-half of a broker's fee for selling real estate and at his request brought an action to compel specific performance by the vendor and the matter was settled out of court and the cause dismissed by the plaintiff, the attorney's lien attached to the commission paid by the vendor.

3. ———: ———: **Broker's Commission: Statutory Construction.**
A broker sold land and thereby earned a commission. The land-
owner refused to consummate the sale. The broker procured
his attorney to bring a suit for specific performance in the
name of the purchaser against the landowner. This was settled
out of court, the cause dismissed, deed made and the commis-
sion paid. *Held,* the attorney's lien attached to the commission
since it was the proximate result of the enforcement of the
cause of action, and the statute being remedial is to be liber-
ally construed; and the fact that the action was in the name
of the purchaser and not the broker will not prevent the lien's
attaching.

4. ———: ———: **Contract: Will: Instruction.** A contract be-
tween an attorney and his client and also a certain clause in a
will conferring a right on the client to sell certain real estate
are considered in connection with the evidence, and the bring-
ing of certain suits to enforce specific performance of a sale ef-
fected by the client and to recover certain commissions are held
to come within the contract and to bind the client.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*James McCann* and *R. E. Ball* for appellants.

(1) This is an action in equity, seeking to enforce
an attorney's lien on funds. Such an action will not
lie. Fromme v. Guaranty Co., 78 N. Y. Supl. 895; Young
v. Renshaw, 102 Mo. App. 173. (2) No attorney, as-
serting an equitable lien, should be heard or permitted
to say, as a basis of his claim, that contracts and plead-
ings, which he drew, were filled with falsehoods. To so
permit would violate the maxim of equity which is time
honored, if not always honored, that, "he who comes into
a court of equity and invokes its powers for his relief,
should come with clean hands." The motion to strike-
out parts of the reply should have been sustained.
Fisher-Hanson v. Railroad, 173 N. Y. 492; Tompkins v.
Railroad, 72 S. W. Rep. 116. (3) The lien of an at-
torney, if he has any, is limited solely to the subject-

matter of the suit. In this case, and under plaintiffs' contract of May 29th, it could not extend beyond the fifteen hundred dollars sued for by plaintiffs in case of Austin v. Dawson's executors. One-fourth of this plaintiffs received, and the other fourth they refused to accept, and it was tendered into court for them. The only other suit was the specific performance action brought by Peltier, and for their compensation in that action they had a special contract for the payment to them of one thousand dollars, on which suit is now brought. Exhibition Co. v. Crane, 167 N. Y. 505; Young v. Howell, 64 App. Div. (N. Y.) 246. (4) On the merits, and in view of the proof, it cannot be disputed with truth that Austin's obtaining the funds, which he did obtain, was by virtue of his agreement with Peltier to divide the profits of a resale, and it cannot be disputed with truth that the commission, the value of the agency mentioned in plaintiff's contract on which they sue, was agreed upon between all parties as being fifteen hundred dollars, and that Austin having paid one-fourth of this commission, and having offered to pay and paid into court another fourth, has discharged his full obligation under the terms of his contract of May 29, 1902.

*Lozier & Morris* and *Wm. J. Allen* for respondents.

(1) How much does Austin owe plaintiffs on their contingent fee under their contract of May 29? Is it $375 or $2,235?

This must be determined by a just and equitable construction of the contract in question.

(2) The prime rule for the construction of contracts is that the intent of the parties as disclosed by their language be given effect. Redheffer v. Leathe, 15 Mo. App. 12; Ellis v. Harrison, 104 Mo. 270; Hanna v. Land Co., 126 Mo. 1; Knapp v. Knapp & Co., 127 Mo. 53.

(3) If the intention can be ascertained by the acts and conduct of the parties, such interpretation should

prevail. Brewing Co. v. Water Co., 34 Mo. App. 49; Rose v. Carbonating Co., 60 Mo. App. 28; Drug Co. v. Sanders, 70 Mo. App. 221; Newberry v. Durand, 87 Mo. App. 290; Laing v. Holmes, 93 Mo. App. 231; Ireland v. Spickard, 95 Mo. App. 53; Ellis v. Harrison, 104 Mo. 270; Depot Co. v. Railway, 113 Mo. 225; Carter v. Foster, 145 Mo. 383.

(4) An attorney's lien upon a fund in the hands of a third party is properly enforcible by a suit in equity,

The enforcement of liens is a distinct subject of equity jurisdiction. Bank v. Packing Co., 138 Mo. 92; Burnham Munger & Co. v. Smith, 82 Mo. App. 44.

Our attorney's lien act is borrowed entirely from the New York code. Consequently a late New York decision upon this identical point of equity jurisdiction is forcefully in point. Fisher-Hansen v. Railroad, 173 N. Y. 492, 66 N. E. 395.

(5) Equity has juridiction to enforce statutory liens when the statute itself provides no method of enforcement. Gilchrist v. Railway (C.C.), 58 Fed. Rep. 708; Railway Co. v. Fackney, 78 Ills. 116; Gibbons v. Hamilton, 33 How. Prac. (N. Y.) 83; Fillmore v. Wells, 10 Colo. 228, 15 Pac. 343.

(6) The lien of an attorney attaches to any property which is the result or fruitage of his services. New York Code, sec. 66; Acts of 1901 (Mo.), p. 46; Canary v. Russell, 31 N. Y. Suppl. 291, 10 Misc. Rep. (N. Y.) 597, 24 Civ. Pro. R. 109; In re Wilson, 12 Fed. Rep. 235; Morrison v. Ponder, 45 Ga. 167; Porter v. Hanson, 36 Ark. 591; Bank v. Davidson, 42 Pac. 687; Fisher-Hansen v. Railroad, 173 N. Y. 492, 66 N. E. 395.

ELLISON, J.—The plaintiffs are attorneys at law and brought this action in equity to enforce a lien in their favor for the sum of $2235, against a fund of $4470, deposited by the defendant Austin in the banking house of the defendant Wilcoxson & Co. The decree of the circuit court was in favor of the plaintiffs.

It appears that Richard Dawson, of Maysville, Kentucky, owned 1240 acres of land in Carroll county in this state and that Dawson died in the year 1900, leaving a will which contained, among other provisions, the following clause 8, relating to defendant Austin, viz: "I desire that my friend F. F. Austin will assist my executors in selling said land in Carroll county, Missouri, and in collecting rent which may be due on said land. For which services I desire my executors to pay said Austin a reasonable, liberal compensation for his services." Defendant Austin had a claim against Dawson's estate on a lost note for $5,000.

It seems that the executors did not recognize any obligation whereby they were bound to engage the services of Austin in the sale of the real estate, nor were they inclined to admit the validity of his claim on account of the lost note. In this situation of affairs Austin engaged the plaintiffs as his attorneys whereby they were to "collect and adjust or to institute and conduct proceedings against the estate of Richard Dawson, deceased, on account of a note of $5,000 and also the matters mentioned in clause 8, above set out, of the will aforesaid, as well as any and all other claims and demand which he, Austin, may have against the estate of said Richard Dawson, deceased." For such services plaintiffs were to receive a contingent fee of "50 per cent of any and all sums that may be recovered on the above claims, whether by suit or compromise."

Under the advice and direction of plaintiffs, the defendant obtained from the executors such recognition of his authority to sell said lands as induced him to undertake to sell them upon the terms agreed between him and the executors, to-wit: thirty dollars per acre net to the executors, the defendant after defraying expenses to retain balance of all over that price as his compensation. Defendant, with the aid and assistance of G. J. Peltier, then sold the lands to one Fred Fisher. This sale to

Fisher was made at forty dollars per acre, being ten dollars an acre more than the price for which he was authorized to sell it, aggregating a total sum of $12,400 more than such authorized price. Defendant reported the sale to the executors as made to Peltier. But the evidence discloses, beyond doubt, that Peltier was not the purchaser in fact and that he was only used as the medium through which the title was to be passed to Fisher.

It is however claimed by defendant that he actually sold the land to Peltier and so contracted with him on August 7th, and that the agreement was that Peltier should pay thirty dollars per acre and pay him $1500 as commission, and also one-half the profits which might be made by Peltier when he should sell to another. That Peltier sold the land to Fisher at $40 per acre, together with an adjoining 120 acres which he (Peltier) owned. And that under his agreement with Peltier he was entitled to one-half of his profit on the Dawson tract as well as the commission of $1500. That when Peltier paid him $750 of the commission he paid one-half thereof to plaintiffs; and that when Peltier paid him the remaining $750 he offered one-half thereof to plaintiffs in compliance with his contract with them, but that they refused to receive or accept it in that way—they claiming that they were entitled to one-half of what defendant got out of the transaction, less expenses, etc. It is apparent that the point to defendant's contention is to maintain that he only received $1500 commission in the sale of the land by the executors and that there was thereafter a resale by Peltier to Fisher in which the profit was made and that this profit was not covered by the contract with plaintiffs and therefore he does not owe them any part of it.

But the claim that there was in reality a sale to Peltier except as a mere conduit through which the title was passed to Fisher has no substantial support. The evidence leaves no room for doubt that defendant procured

the sale to Peltier at $30 per acre and that the latter made the purchase at that price merely to transfer it to Fisher at $40 per acre, so as to conceal from the executors the extraordinary sum taken out as commission for the sale. The final written contract between Peltier and defendant for sale of the land was not signed until Peltier had closed his contract of sale to Fisher; and, indeed, the money paid by Fisher was used in payment to the executors, Peltier not having any money with which to make the purchase.

It is true, as above mentioned, that defendant and Peltier stated that defendant contracted the land to Peltier on August 7th, between two and three weeks prior to the latter's sale to Fisher, but if that should be conceded, it was yet made to appear that at that time it was considered that a resale was virtually made at the advanced price. But aside from the mere assertion that the sale had been made to Peltier at that early date (August 7th) we find that defendant wrote a letter to the executors on the 14th of that month in which he stated that he "had hoped to have it (the land) sold before this at the price you named but it seems to be a hard thing to get buyers up to the point in paying some money down. I have a man who I am sure will take the land at that price and I think his money will be ready pretty soon." This letter undoubtedly meant that the land had not been sold to Peltier and shows, in the light of other evidence, that the expectation he had of selling was based on the sale to Fisher. And so defendant on cross-examination admitted, in terms, that he never reported a sale to his principals until Fisher had signed the contract of purchase at $40 per acre, on August 26. And that Peltier never announced his readiness to take the land at $30 per acre until he had closed his contract with Fisher; as of course he could not, since it was Fisher's money which was to be used in making the purchase.

To allow defendant to succeed on the merits of the case would be to concede to his theory sufficient potency not only to make for him the large compensation he has received by reason of his extraordinary conduct with his principals in Kentucky, but, in addition, in great measure, to avoid his contract with plaintiffs. The evidence in defendant's behalf is sufficient of itself (considered with the circumstances developed) to discredit the claim he now makes, and we therefore have no hesitation in holding that the defense set up is without substantial support.

An important branch of the case remains to be considered. Have the plaintiffs a lien on the sum defendant received and which, as has been stated, was deposited in bank? The question involves a construction of our attorneys' lien statute, since, without the statute, there would be no such lien in this State, as has been more than once decided. Alexander v. Railway, 54 Mo. App. 66. The lien law was enacted recently, the first section reading as follows: "The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosever hands they may come; and cannot be (effected) [affected] by any settlement between the parties before or after judgment." Acts 1901, p. 46.

In order to determine the question and to understand our conclusions, it will be necessary to refer to some additional evidence in the cause bearing directly on the lien invoked by plaintiffs. When defendant notified the executors by letter of August 26th that he had sold the land for $30 per acre, he, as above shown, did

not inform them that Fisher had bought it for $40 per acre, and they replied to his letter that they would come to Missouri to close up the sale. But when they reached Carroll county they demanded of defendant that he sign a receipt for the $1,500 commission—they supposed he was receiving—as not only in full of the commission but of all other claims and demands against the estate. That, defendant refused to do. The executors for that and, possibly, other reasons, refused to execute a deed to Peltier. Thereupon, plaintiffs were directed by defendant to bring two suits against the executors, one in defendant's name for fifteen hundred dollars for having procured a purchaser for the land; and the other in the name of Peltier for specific performance of the contract of sale to him. Immediately after the institution of these actions the executors concluded to consummate the sale by making a deed to Peltier and the suits were thereupon dismissed.

It is said that the lien statute above quoted only mentions, in terms, as matter to which a lien may attach, a verdict, report, decision or judgment, in the client's favor, or the proceeds thereof; and since there was neither a verdict, report, decision nor judgment in the cases which plaintiffs brought against the executors, that there can be no lien under the terms of the statute. But the statute is more comprehensive than that: it declares that the lien shall attach to the verdict, etc., etc., but the lien itself, in the first instance, is conferred upon the *cause of action* from the commencement thereof. Being conferred upon the cause of action, it is not lost by a settlement of such cause of action. It attaches to the proceeds of such action, though the action never reaches a verdict, report, decision or judgment. And so the statute, in effect, declares. For, it reads that such lien cannot be affected by any settlement between the parties "*before* or after judgment." By thus keeping the lien alive against the cause of action, even upon

a settlement before judgment, it must have been intended that it should attach and continue to hold in cases, like the present, where there has not been a verdict, report, decision or judgment.

But regarding the action for specific performance, which plaintiff instituted for defendant, as the cause of action in response to which the executors made their deed to Peltier, the intermediary between the executors and Fisher, thus consummating the sale negotiated by defendant, and thus enabling him to realize and collect one-half the sum received from Fisher over and above thirty dollars per acre, a question arises whether such sum is the proceeds of the cause of action, in the sense of the statute, to which the lien can attach. We are of the opinion that it is. The cause of action was specific performance: that is to say, to compel the executors to make a deed to the land. They made the deed and thereby defendant received, as the result thereof, the sum in controversy. The sum received was the proximate result of the enforcement of the cause of action. It was a part of the money arising out of the land which was the subject of the action and which the action caused to be conveyed. Being the proceeds of the cause of action, we think it subject to a lien for the compensation defendant agreed to pay the plaintiffs. In Fisher Hansen v. Railway, 173 N. Y. 492, will be found a short history of the growth of the New York statute on the lien of an attorney for services rendered to his client. As that statute now stands, ours is its exact reproduction, so far as the question here is concerned. That statute was there held to be "remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." The court then proceeded to state its conclusion that, in the sense of the statute, the lien of the attorney's claim for services rendered the client ex-

tended to the proceeds of a settlement made before judgment and that it attached to the fund the instant it was created. In the course of the opinion the court said:

"Moreover the general rule is that a lien upon property attaches to whatever the property is converted into and is not destroyed by changing the nature of the subject . . . It follows its subject and cannot be shaken off by change of form or substance. It clings to any property or money into which the subject can be traced until it reaches the hands of a bona fide purchaser. So a lien upon a claim or a cause of action follows the fund created by a settlement of the claim, which thereupon ceases to exist. It attaches to the amount agreed upon in the settlement the instant that the agreement is made. . . . The lien was not affected by the judgment but leapt from the extinguished cause of action to the amount agreed upon in settlement."

We are cited to the case of Young v. Renshaw, 102 Mo. App. 173, as authority against the plaintiffs' right to a lien. The point decided in that case was that the lien act of 1901 was not retrospective and did not apply to a contract and judgment existing prior to the date that it took effect. The report of the case contains an opinion by Judge Bland written before his attention was called to the respective dates of the law and the judgment in which he states his view and the reasons why in his opinion a lien could not be enforced against the judgment itself. But the matters suggested by Judge Bland do not meet the case at bar. Here, there is a fund arising out of a cause of action upon which plaintiffs had a lien and undoubtedly such lien being transferred from the cause of action to the fund can be enforced in equity against the fund. Fisher-Hansen v. Railway, supra.

Defendant contends that the action for specific per-

formance was in the name of Peltier, as plaintiff, and that therefore defendant, as the client of plaintiffs, did not have a cause of action upon which a lien could arise out of a contract with defendant. We have already seen that defendant directed and employed plaintiffs to bring the action for specific performance in Peltier's name. The object and purpose of defendant—the cause which moved and actuated him in employing plaintiffs to bring the action—was to realize for himself the sum he was to make by a sale of the land. He could not make that sum without a sale of the land and he could not procure a consummation of the sale except by the suit for specific performance. He therefore employed and directed the plaintiffs to institute the action, and though it was instituted in the name of another, yet, so far as this controversy is concerned, it was for defendant's benefit. There can be no question as to the object and intent of the defendant in directing the suit to be brought. Nor is there any doubt as to the merit of plaintiffs' claim against him. The only question is whether the object and intent of the statute is broad enough to give to plaintiffs a lien as against defendant's part of the proceeds realized from such suit. In view of the remedial character of the statute, we conclude that the mere fact that the action was in the name of a third party does not prevent a lien attaching to that part of the proceeds of the action which goes to the party employing the attorneys to institute the action.

It is a part of defendant's contention that the suits brought by plaintiffs were not services within the purview of clause 8 of the will and of the employment of plaintiffs by defendant to aid him in reaping the benefit of that clause. We, however, have no doubt on that question. The evidence leaves but one opinion to be entertained and that is, that defendant claimed his right under the will and that he employed plaintiffs in that behalf, who immediately set to work to fortify and

strengthen his claim.    These efforts culminated in the suits and success followed from those actions.

We have not attempted to set out the evidence covering a statement of the extent and value of the services rendered by plaintiffs; nor have we commented, beyond a reference thereto, on the suit in defendant's name for $1,500 for procuring a purchaser for the land for the reason that the contract with plaintiffs is not questioned and their right to a lien for their part of $1,500 is conceded.

The judgment of the trial court will be affirmed. All concur.