## MARY CURTIS, Respondent, THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, April, 2, 1906.

1. **ATTORNEY AND CLIENT: Settlement: Fraud: Evidence.** A settlement between the parties without knowledge of plaintiff's attorney and the evidence relating thereto are reviewed and the finding of the trial court that there was no fraud, is sustained.

2. ——: ——: **Lien.** An attorney has no lien on the judgment for his fees save by the statute; and a settlement between the parties without the sanction of plaintiff's attorney may destroy the judgment, unless it comes within the purview of the statute.

3. ——: **Lien: Missouri Statute.** The first section of the Missouri statute relating to lien of attorney for his fees appears to be a copy of the New York statute prior to its late amendment, and has been often construed by the courts of that State, and this should influence Missouri courts in the interpretation of the statute.

4. ——: ——: **Statute: Interest of Parties.** The lien of a statute covers the client's whole claim or cause of action and attaches to the verdict, report, decision or judgment in the client's favor and the proceeds thereof, and cannot be effected by the parties except with the written consent of the attorney in whose favor it attaches.

5. ——: ——: ——: ——: **Settlement: Remedy.** Upon a settlement between the parties the attorney has three remedies: he may follow the proceeds; he may recover his share from the defendant; or, when merged in judgment, he may enforce his lien against it.

6. ———: ———: ———: ———: ———: ———. When the judgment has become a finality and it can be collected in full, the amount of the fee has become liquidated and cannot be lessened without the consent of the attorney.

7. ———: ———: ———: ———: ———: ———. The statute preserves the lien but the liquidation of the contingent fee does not occur until the final end of the litigation or an honest settlement by the parties; and the statute does not deprive the plaintiff of the control over the action. It merely provides a security for the attorney's fee and not its liquidation.

8. ———: ———: ———: ———: ———: ———. The fact that plaintiff's attorney is not present at the settlement and has a contract not to compromise or dispose of the action without the attorney's consent, cannot defeat a settlement made in good faith by the defendant, unless at least notice of such provision is served upon the defendant.

9. ———: ———: ———: ———: ———: ———. Though the statute provides no remedy to enforce a lien the courts will not suffer it to perish from such failure. On settling the judgment it becomes the *res* to which the lien attaches and destroys it except for securing the attorney's fees, and the court may substitute the attorney for the plaintiff and award execution for the enforcement of his interest in the judgment; and where the proceeds are under control of the court, it can so direct that as to pay the fee.

10. ———: ———: ———: ———: ———: ———. Plaintiff recovered a judgment of one thousand dollars. Pending the motions, without the consent of her attorneys with whom she had a contract of which the defendant had been notified, she settled for $200 and signed a stipulation authorizing the setting aside of the judgment and a dismissal of the cause. *Held*, the court properly overruled the motions, thereby preserving the attorney's security.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*John H. Lucas* and *Chas. A. Loomis* for appellant.

(1)   Parties may stipulate with reference to the disposition of cases at any stage of the proceeding, and also with reference to matters of practice and procedure, and the court will recognize and enforce such stipulation when legally made. Where parties to suit stipu-

late in writing for a valuable consideration that a new trial shall be granted and the cause dismissed, and the court judicially determines such stipulation was voluntarily entered into for a valuable consideration and was and is a valid and binding stipulation between the parties, it is the duty of the court to recognize and enforce such stipulation and to grant a new trial and dismiss the cause in accordance with such stipulation. Barber v. Berry, 4 Mo. App. 585; Blair v. Bank, 8 Mo. App. 318; Alder v. Wagner, 47 Mo. App. 25; Freedman v. Hulberg, 89 Mo. App. 340; Goldsmith v. Candy Co., 85 Mo. App. 595; St. Joseph v. Hax, 55 Mo. App. 293; State ex rel. v. Railway, 47 Mo. App. 212; Galbreath v. Rodgers, 30 Mo. App. 401; Galbreath v. Rodgers, 45 Mo. App. 324.

*T. B. Buckner* and *Madden & Scholer* for respondent.

(1) The first section of our attorney's lien law was taken from the New York statute where it was adopted in 1879 and the courts of that State had construed the law prior to its adoption here. Peri v. Railway, 152 N. Y. 521, 46 N. E. 849; Fischer-Hansen v. Railway, 173 N. Y. 492, 66 N. E. 395; Conklin v. Austin, — Mo. App. — 86 S. W. 911; Barry v. Railway, 84 N. Y. Supp. 831; Marvin v. Marvin, 19 N. Y. Supp. 371; Guliano v. Whitenack, 30 N. Y. Supp. 415; Caster v. Ferry Co., 98 N. Y. 660; In re Regan, 167 N. Y. 338, 60 N. E. 658; Serwer v. Sarasohn, 86 N. Y. Supp. 841.

JOHNSON, J.—On February 19, 1904, a verdict of $1,000 was returned in favor of plaintiff in an action brought by her to recover damages for personal injuries. Motions for a new trial and in arrest of judgment were filed by defendant in due time, but were not determined by the trial court until October 22, 1904. They were then overruled and defendant appealed. At the hearing

of the motions defendant offered in evidence an instrument in writing as follows:

"*Mary Curtis,* Plaintiff, v. *Metropolitan Street Railway Company,* Defendant.

### AGREEMENT.

"I, Mary Curtis, plaintiff in the above-entitled cause, hereby agree that the motion for a new trial filed by the defendant in the above-entitled cause shall be sustained by the court and that the judgment heretofore rendered in said cause against the defendant and in favor of the plaintiff shall be set aside, and that the above cause shall be dismissed.

"MARY CURTIS,"

"Plaintiff."

Counsel for plaintiff admitted the signature of their client to this instrument, but complained that it had been obtained by means of fraudulent representations and practices of defendant, and in support of this assertion presented an affidavit made by plaintiff, in which she detailed the false and artful means which she claimed defendant employed to induce her consent to a settlement of her cause of action and a dismissal of her suit. Both parties appeared to be eager for a judicial investigation of these charges and the court permitted them to introduce evidence pro and con, from which the following facts appear.

Plaintiff, a young unmarried woman without property or means, on August 1, 1903, employed the law firm of Madden & Scholer of Kansas City to prosecute her claim for damages against defendant and entered into a written contract with said attorneys, under the terms of which she agreed "to pay said attorneys for their services an amount equal to fifty per cent of the amount recovered either by suit or compromise" and further agreed "not to compromise or dispose of said action in any way without the written consent of said attorneys."

On August 28, service of a written notice of this contract was acknowledged by defendant's attorneys.   In this notice defendant was advised of the terms of the contract and that plaintiff's attorneys claimed an interest in and "a lien upon said claim or cause of action of the plaintiff to the extent of said fifty per cent."   In May, 1904, while the case was pending on the motions for a new trial and in arrest, plaintiff called upon Mr. Satterlee, defendant's assistant general manager, at his office, and entered into negotiations for a settlement of the case.   An agreement was made by the terms of which plaintiff received a check for $200, which she shortly cashed, and in return signed and delivered to Mr. Satterlee the following instrument:

"In the Circuit Court of Jackson County, Missouri.
"*Mary Curtis*, Plaintiff, v. *Metropolitan Street Railway Co.*, Defendant.

### DISMISSAL.

"I hereby dismiss the above-entitled cause and personally authorize and direct my attorney at law to appear for me and have order of dismissal made of record, and the above court is requested and directed to dismiss said cause with or without the appearance of an attorney.   And I hereby release all claims or judgments entered in my favor in the above-entitled cause.

MARY CURTIS."

"Plaintiff."

The attorneys of defendant after an inspection of this paper prepared the "agreement" for an order sustaining the motion for a new trial and sent it to plaintiff's home for her signature, so that at the hearing of the motions both instruments were extant, but that executed by plaintiff after the consummation of the settlement was relied upon by defendant to control the disposition of the case.

When plaintiff and Mr. Satterlee made the settle-

ment, both knew they were acting without the knowledge and consent of plaintiff's attorneys and knew that the attorneys claimed a lien upon the judgment for their fees. Neither intended to, nor thought they could, entirely destroy the attorneys' lien, but both evidently were actuated by the thought that the amount of the attorneys' fees could be fixed by the parties to the suit without consultation with the attorneys. The supposition that controlled their action is clearly suggested in this testimony of Mr. Satterlee. "Q. Did you tell her in that conversation that you would pay the attorneys yourself? A. No, I did not. I said we would have to pay them fifty per cent of what we gave her. I told her we would have to pay it. "Q. And you thought it would be a pretty good settlement to make, to pay her $200 and pay them $100 on a $1,000 judgment, that is your idea? A. I thought it would not be a bad settlement, I would not pay any more to keep from going on appealing it. If we could settle $1,000.00 for $300, I didn't think it was a bad settlement." This was on cross-examination. On the redirect, he said: "Q. And the question of attorneys' fees, you told her you supposed you would have to pay the lawyers half? A. They had a lien: we had to pay them their proportion."

It is apparent from these admissions of defendant's managing officer that nothing more was intended by the parties than the satisfaction of plaintiff's own interest in the judgment by the payment made to her and that, as between them, the settlement of plaintiff's attorneys' fees was understood to devolve upon defendant.

In the order overruling the motions, the court made this finding of fact: "And the court, from the evidence introduced by plaintiff and defendant upon the hearing of said motion for a new trial, finds that defendant was not guilty of any fraud, misrepresentation, concealment or deceit in procuring or inducing plaintiff to sign, execute or deliver the said release, voucher and stipulation

to the defendant." As we understand this finding, it is restricted in its scope to the relation between the parties litigant and not to their conduct towards the attorneys of plaintiff, and it has our approval. The learned trial judge, who heard the testimony and observed the parties, was in a better position than we are to weigh the evidence and, in such situation, we do not interfere with findings of fact made by the trial judge except when it is clearly apparent they are opposed to the great weight of the evidence. No such hostility is found in the record before us, but, to the contrary, we are satisfied from the facts in proof that plaintiff was not misled or deceived by defendant. She knew the case in all likelihood would be appealed and its final determination delayed, and was influenced to accept the settlement offered by her own necessities and her knowledge of the uncertainties of litigation rather than by distrust of her lawyers. If she entertained such distrust, it was not engendered by defendant. It necessarily follows that the interest of plaintiff in the judgment was released and satisfied in the settlement made and the attorneys of plaintiff are the only parties whose right to insist upon the preservation of the judgment will receive any consideration.

It will be observed that in the written agreements signed by plaintiff she assumed the right and attempted to dispose of the entire cause of action then merged in the judgment. It is argued that as the attorneys of plaintiff were not parties to the suit, any lien they might have upon their client's cause of action could not be used by them to deprive her of her right to compromise her case at any stage of the proceeding and to dispose of it in the manner stipulated with her adversary, and that therefore the trial court abused its discretion in refusing to give effect to the settlement which required that the judgment be set aside and the suit dismissed. It may, with reason, be said that the action of the court in thus

preserving the judgment, if sustained, must be predicated upon the hypothesis that the attorneys of a party litigant, in the protection of their lien for fees upon a judgment, into which their client's cause of action has been merged, have the right, after the parties to the suit have agreed upon the *destruction* of the judgment, to have it kept alive for the benefit of their lien and in effect to substitute themselves for their client as its owner, in order that they may not be deprived of the remedy afforded by the judgment itself for the enforcement of the lien.   This right, if it exists, is derived from the attorney's lien statute, Session Acts 1901, page 46.   Prior to this enactment, an attorney had no lien for his services on a judgment obtained by him for his client.   [Conklin v. Austin, 86 S. W. 911; Alexander v. Railway, 54 Mo. App. 66; Frissell v. Haile, 18 Mo. 18; Roberts v. Nelson, 22 Mo. App. 28.] The statute reads as follows:

Section 1.   The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law.   From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

Sec. 2.   In all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto,* it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the

institution of suit or action, or at any stage after the institution or suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendants or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as herein above provided between such attorney and his client.

Section 1 of this statute is an exact copy of section 66 of the New York Code prior to its amendment in 1899. The amendment consisted of the addition of this sentence: "The court upon the petition of the client or attorney may determine and enforce the lien."

The statute has been before the courts of last resort in New York for construction and application. [Peri v. Railroad, 152 N. Y. 521; Fischer-Hansen v. Railroad, 173 N. Y. 492; Matter of Regan, 167 N. Y. 338; Bailey v. Murphy, 136 N. Y. 50; Barry v. Railroad, 84 N. Y. Supp. 830; Marvin v. Marvin, 19 N. Y. Supp. 371; Goodrich v. MacDonald, 112 N. Y. 163.] And our conclusions

are largely influenced by the reasoning to be found in these cases. In the enactment under consideration we find expressed a legislative recognition of the right of an attorney to contract with his client for compensation on account of professional services to be rendered. In such contract, the compensation to be received may consist entirely of an agreed percentage of the proceeds of any settlement of the client's cause of action made either before of after judgment. Provision is made for the creation of a lien in favor of the attorney upon the giving of written notice of the contract to the adverse party. The lien covers the client's whole claim or cause of action and during the progress of litigation attaches to any "verdict, report, decision or judgment in his client's favor and the proceeds thereof." The lien beginning with the service of notice becomes and continues to be co-extensive with the property and rights of the client in the subject-matter of the employment and passes from an unliquidated demand to any higher form of security (such as a judgment) into which it may become merged.

This lien cannot be destroyed or affected by the parties except with the written consent of the attorney in whose favor it attached. When the parties make a settlement without obtaining this consent and the full proceeds thereof are paid over to the client of such attorney, three courses are open to the attorney. He may follow the proceeds into the hands of his client or any other person who may have received them: or he may recover his share of them from the defendant in a separate proceeding. [Yonge v. Transit Co., 109 Mo. App. 235.] The defendant is estopped after receiving notice of the lien from saying that he parted with the money he was in duty bound to pay into the hand of the owner of the lien; or, lastly, when the client's cause of action has merged into a judgment, the attorney may enforce his lien against the judgment itself — the res to which it attached — in order that he may have the benefit of the

liens and remedies belonging to his security. [New York cases, supra; Young v. Renshaw, 102 Mo. App. 173; Patrick v. Leach, 17 Fed. 476; Newbert v. Cunningham, 50 Me. 234; Fillmore v. Wells, 10 Colo. 233.]

It is the last-mentioned one of these remedies that the attorneys of plaintiff are seeking to enforce in this proceeding and we now come to the consideration of two questions, i. e.: First, what principle controls the ascertainment of the amount of the attorneys' lien? And second, can the attorneys avail themselves of their client's suit (which she has settled and perforce must be held to have abandoned) in which to adjudicate and enforce their lien?

On the first of these questions, it is the contention of the attorneys of plaintiff that when their client's cause of action merged in the judgment recovered by her, the amount of their fee became *ipso facto* liquidated, that under the terms of their contract they became the equitable owners of one-half of the judgment and that the amount of their interest therein could not be affected by any clandestine settlement made by the parties themselves. We are willing to concede the soundness of this argument under other circumstances than those before us. Had the settlement been made at a time when the judgment had become a finality, that is, when the litigation had been finally closed and no doubt had existed as to the ability of the plaintiff to collect the judgment in full upon the execution; we would not hesitate in saying that the amount of the fee had become liquidated and could not be lessened except with the consent of the attorneys. We understand this was the conclusion reached in the case of Peri v. Railroad, 152 N. Y. 521. In the case before us, the solvency of defendant is unquestioned, but when the settlement was made the litigation was still in progress. True, plaintiff had recovered a judgment in the trial court, but the motions for a new trial and in arrest alleged numerous errors and had not been passed upon.

If overruled upon hearing, defendant had the right to appeal to the appellate court, so that plaintiff was confronted with the possibility of having her judgment set aside and perhaps in the end losing her case. In this attitude of the case, to adopt the argument of the attorneys would require the holding that the rendition of the judgment gave them the power to block any honest settlement their client might wish to make. We are much impressed with the reasoning on this subject in the case of Fisher-Hansen v. Railroad, 173 N. Y. l. c. 500. "But did the Legislature in its effort to protect attorneys intend to sacrifice the client by preventing him from making an honest settlement of his own cause of action? Did it intend to overturn the ancient and honored rule of law that settlements are to be encourged by giving the attorney power to insist that the litigation must continue until he consents that it should stop? Did it intend to so tie the hands of the client that he could not settle his own controversy without the permission of his attorney? A cause of action is not the property of the attorney, but of the client. The attorney owns no part of it for a lien does not give a right to property, but a charge upon it. As it is merely incidental and for the purpose of security only, it would not be reasonable to hold that the Legislature intended it should be the means of blocking an honest and genuine adjustment of controversies. We think the lien is subject to the right of the client to settle in good faith without regard to the wish of the attorney and we so held in the Peri case, where we declared that 'the existence of the lien does not permit the plaintiff's attorney to stand in the way of a settlement.' The right of the parties to thus settle is absolute and the settlement determines the cause of action and settles the claim."

In the statute before us, we find no provision for the liquidation of the amount of the attorney's fees by the mere rendition of the judgment that does not end the

litigation. The statute preserves the lien, but the liquidation of a contingent fee does not occur until the final end of litigation or until the making of an honest settlement by the parties. Had the attorneys been present at the negotiations between the parties, their client, if acting in good faith, could have settled her case for an amount that would have given her $200 in the face of their opposition and her acceptance of the settlement would have liquidated the amount of their fee. The statute did not deprive plaintiff of this control over her own lawsuit. Its only office is to provide a security for an attorney's fee, not its liquidation.

But it is urged that the settlement was not honest, because plaintiff's attorneys were ignored. A settlement made by the parties for the purpose of defrauding the attorneys out of the whole or a part of their lien would be brushed aside and disregarded, but the statute does not directly, nor inferentially, abrogate the ancient rule universally followed that not only permits, but encourages, parties litigant to meet and adjust their differences, either with or without the presence and aid of their attorneys. A party, for various reasons, may prefer not to have his attorney present during the compromise negotiations and may even prefer not to consult with him about them. He may think that the presence of an attorney would have a bad effect upon his adversary and thereby interfere with the success of the negotiations. Many attorneys are far abler in advocacy than in compromise, or he may fear that his attorney might attempt to dissuade him from his purpose to settle and succeed in turning him from a course he desires to pursue. The relation of client and attorney is analogous to that of principal and agent and, as the cause of action is the property of the client and the right to dispose of it is exclusively his, he must be left free — so long as he acts within the bounds of good faith — to exercise his own judgment in the compromise of his demand and in

118 App—23

determining when and for what purpose he will invoke the aid of his attorney. We have not overlooked plaintiff's agreement in the contract of employment "not to compromise or dispose of said action in any way without the consent of said attorneys." That provision, if enforceable under any circumstances, is without effect in the present proceeding, for the reason that no mention of it was made in the written notice to defendant and therefore defendant had no legal knowledge that plaintiff had attempted by contract to abdicate her right to dispose of her own cause of action. As the sole purpose of plaintiff's insistence is to enforce a judgment against defendant for the benefit of the lien of her attorneys, the settlement made cannot be set aside on the ground of fraud without proof that defendant was a party to the fraud.

We find no evidence in the record that tends to accuse defendant of any fraud. It settled with plaintiff upon terms that were satisfactory to her, paid her the share of the proceeds due her under the terms of her contract with her attorneys; recognized the validity of that contract and agreed, in effect, to discharge the lien it created. The settlement will not be disturbed. However, the amount due the attorneys thereunder was the sum of $200 and not $100, as erroneously assumed by defendant. The contract gives the attorneys fifty per cent of the proceeds of any settlement. Defendant paid plaintiff $200.00 as her share of the proceeds and the attorneys have a lien upon the judgment for a like amount.

Passing to the consideration of the second question, we find in the enactment before us that the Legislature has provided for the creation of a lien without giving a remedy for its enforcement. However embarrassing this omission may be, courts will not suffer a new right to perish for want of a remedy. When the settlement was made, the *res* to which the lien attached was the judgment. The settlement agreement had the effect of de-

stroying that judgment except for the single purpose of securing the payment of the attorney's fee. If an action in equity for the foreclosure of the lien would lie,' the decree therein could go no further than to order the substitution of the attorneys for their client as owners of the judgment to the extent required for the satisfaction of the lien, but the final remedial process in such case would be an execution for the enforcement of the judgment. Such proceeding would be unnecessarily clumsy and circuitous and we are inclined to approve the rule followed in New York and adopted by the St. Louis Court of Appeals in the case of Young v. Renshaw, supra, where it is stated: "From these authorities, we conclude that the remedy afforded by the common law to the attorney for the enforcement of his lien on a judgment, which he has obtained for his client, is, if the judgment is paid in disregard of his rights to move the court to set aside the satisfaction *pro tanto,* and to award execution to the extent of his lien . . . that where the judgment or its proceeds are yet under the control of the court, it is the duty of the court on motion of the attorney to control the judgment or its proceeds until he has been paid his fee."

The learned trial judge, being advised by the evidence that the judgment which defendant sought to have set aside and extinguished was subject to a lien in favor of the attorneys of plaintiff, properly overruled the motions for new trial and in arrest and thus preserved the integrity of the attorney's security. The grounds for a new trial stated in the motions were abandoned in the settlement and the granting of a new trial followed by the immediate dismissal of the suit under the terms of the agreement made by the parties would have been a direct violation of the provision of the statute, which prevents the parties from affecting the attorney's lien except on the written consent of its owner. Had the defendant's request been granted, plaintiff's attorneys,

upon motion filed in the case, would have been entitled, under a showing similar to that in the record before us, to have the judgment (which under the settlement had become final) reinstated and their lien upon it foreclosed. In such situation, the court acted with sound discretion in refusing to give effect to the stipulation of the parties. It follows from what we have said that plaintiff's attorneys may hereafter in the case in hand file their motion in the circuit court for the foreclosure of their lien and, upon proof of the facts under consideration, be entitled to have an execution issued in their favor for the enforcement of the judgment in an amount sufficient to satisfy their lien. Defendant will be entitled to a satisfaction of the judgment upon the discharge of the lien and the payment of the costs of the suit.

The judgment is affirmed. All concur.