# ELLIS ROGERS, Appellant, v. DAN NEE and J. T. DEVORSS, Respondents.

**Springfield Court of Appeals, June 26, 1916.**

1. **ATTORNEY AND CLIENT: Attorney's Fee: Contingent Fee.** Plaintiff who was injured in a stone quarry entered into a written contract with defendant attorneys, agreeing to pay them fifty percent of the amount collected as the result of a suit brought. No written notice was served on the company with whom plaintiff was working at the time of the injury and no suit was brought, the injured party settling direct with a liability insurance company which carried the risk. He left with this company $50 for his attorneys which they accepted from the insurance company, giving that company a receipt in full. The client was still liable for a reasonable fee, regardless, the payment not being a compromise settlement as between the attorneys and their client.

2. ————: **Payment of Fee: Voluntary Payment: Cannot Recover Back.** Defendants, attorneys, employed on a contingent fee to prosecute a damage case for plaintiff, told their client that if the case should be settled by compromise, their fee would be nominal. The client cannot maintain a suit to recover back a reasonable compensation voluntarily paid the attorneys, the case having been settled.

3. **PAYMENT: Under Duress: What Not.** Mere seizure of property by another by legal process of an honest claim does not constitute duress.

4. **COMPROMISE AND SETTLEMENT: Attorney and Client: Binding Effect of Settlement.** In an action by attorneys against their client for a reasonable attorneys' fee where the client claimed that the attorneys had received fifty dollars in full settlement, this would only constitute defensive matter and where the client later compromised the dispute by paying a larger fee such settlement would be binding on the client, absent fraud or duress.

5. ————: ————: **Settlement of Fee: Duress.** Plaintiff who was injured in a stone quarry, employed, in writing, defendant attorneys to prosecute his suit on a contingent fee of fifty per cent. The injured man settled direct with the liability insurance company for $500. He deposited $300 of this in the bank and left $50 for his attorneys and $50 for his doctor, with the insurance company. The attorneys sued for a reasonable fee, attached his bank balance and told him that the direct settlement of his claim and the depositing of the money in the bank to his individual credit was a crime, but did not threaten to prosecute him, nor

was it shown that the client was in immediate need of the attached funds. He compromised with the attorneys by paying them an additional $150. *Held*, that the settlement was not made under duress.

6. ———: ———: **Duress: "Moral Duress."** Action by a client against his attorneys to recover back fees paid to them in settlement of an attachment levied to enforce the attorney's claim for services. The evidence showed that the suit was instituted at the instigation of an interested insurance company, such company desiring to reduce its own loss at the expense of the attorneys. *Held*, that the doctrine of moral duress of property contrary to equity and good morals could not be applied in favor of the plaintiff.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*John P. McGammon* and *W. W. Herron* for appellant.

*Patterson & Patterson* for respondents.

ROBERTSON, P. J.—Plaintiff by this suit seeks to recover from defendants, who are lawyers residing in Springfield, one hundred and fifty dollars which they collected from him as part payment of a charge for professional services rendered him. The trial court directed a verdict for defendants, plaintiff took an involuntary nonsuit, with leave to move to set the same aside, and after taking the proper steps and obtaining no relief he has appealed.

The plaintiff was working in a stone quarry near Springfield when his hand was caught in some unguarded machinery and severely and permanently injured. The owner of the quarry carried liability insurance and that company took charge of the defense against that claim and has charge of this suit. The insurance company offered plaintiff fifty dollars in settlement of his claim. He refused to accept the offer, employed defendants and entered into a written contract agreeing to pay them fifty per cent of the amount collected as the result of a suit brought. No written

notice was served by the attorneys and no suit was brought. Soon after defendants were employed by plaintiff the insurance company's offer of settlement was raised to three hundred dollars. A report was made by an employee of the insurance company to it of the accident and of the negotiations for settlement in which he stated: "I can see no defense whatever against this man's claim." In that report it was stated plaintiff was insisting on one thousand dollars, and a payment of five hundred dollars was recommended.

Negotiations were carried on a short time between the defendants and the insurance company, but no settlement being effected the insurance company settled direct with plaintiff for five hundred dollars, retaining fifty dollars for defendants and fifty dollars for a doctor who had treated plaintiff's injuries received in the accident. A representative of the insurance company told one of defendants, in response to the statement that they had served no written notice of their lien, that no settlement would be made with plaintiff without said defendant being present. As soon as defendants heard about the settlement they called on the insurance company and learned the details and were paid the fifty dollars. They also learned where plaintiff had deposited a portion of the proceeds of the settlement in a bank and they sued him, obtained an attachment and had the bank served with a garnishment summons. At the same time they sent a request to plaintiff to call at their office, which he did. He says defendants told him they had not received the fifty dollars from the insurance company and that they noticed he had violated the law to a great extent in collecting their money and depositing it in the bank in his name. Plaintiff told defendants that they had agreed to accept a nominal fee if he settled his claim without a suit, and there is testimony tending to prove that fact. He says one of the defendants was wanting two hundred dollars more, but finally wrote a check on the bank for one hundred and fifty dollars and told him to sign it as they had his money tied up in the bank and that was the only way he could get it loose. He

said he "didn't know what to do, only to sign the check for $150." After he signed it defendants told him, he says, that they had received the fifty dollars from the insurance company. The suit of defendants against him was dismissed and the money released, and thereafter the insurance company took charge of him for the purposes of this suit.

Whatever may be thought of the size of defendants' per centage of recovery in the event of a suit, as provided for in their contract, it, is clear that the services they rendered pending the negotiations for settlement were worth several hundred dollars to plaintiff. He was faring much better with them than he did in charge of the insurance company without them.

That plaintiff owed the defendants a reasonable fee for their services is unquestionable, as their written contract provided in terms for a fee after suit was brought, and the payment of the fifty dollars to defendants by the insurance company was not a full settlement of their claim, if their services were worth more, even though the receipt to the insurance company when it was paid so receipted, as it was not a compromise or paid or received, as between plaintiff and defendants, as such. The plaintiff and the insurance company concluded between themselves that fifty dollars would be a reasonable amount to pay defendants, but the amount was not left by plaintiff with it to be paid only in the event defendants would accept it in full payment of their fee and that was not made a condition of its payment. The plaintiff made no claim that the payment to defendants of the fifty dollars constituted a settlement, even after he was advised of its payment to them, as he testified to, immediately following the signing of the check for one hundred and fifty dollars.

This case in the last analysis comes to the sole question as to whether the payment of the one hundred and fifty dollars was made by plaintiff under duress, for if it was not and he paid the defendants that additional amount believing he justly owed it he could not recover it back. Even though defendants had said that in the event of a settlement they would

charge only a *nominal* fee, yet they had a right to reasonable compensation for their services and if plaintiff voluntarily paid the amount within the meaning of the law he cannot recover it back. The plaintiff did leave with the insurance company more than a *nominal* fee and no doubt he left what he was advised would be a reasonable one, so when this amount was left he was trying to deal fairly with his attorneys and would have done so, doubtless, but for the insurance company. The plaintiff had a right to change his mind after he got away from the influence of the insurance company and pay defendants what he may have been convinced was right. We are not unmindful of the rules as to the regard that must be given the testimony where a verdict has been directed.

We understand the rule to be that mere seizure of the property of another by legal process on an honest claim does not constitute duress for that is a matter than can be fought out in the pending litigation. [Wolf v. Marshal, 52 Mo. 167, 170 and 171.] Whether it should be held that the defendants in the case at bar settled their claim in full when they accepted fifty dollars was a matter of defense and when they had taken a different view of the matter and sued plaintiff for an additional amount using in aid thereof the attachment proceeding, the real amount due became a disputed and litigated claim which the parties might compromise and settle, and if this was done, such settlement would be binding in the absence of fraud or duress.

It is said the general rule once existing as to what constitutes a compulsory payment is not so strictly applied as formerly and that now few general principles are applied, but each case is decided on its own facts, according to justice and fair dealing may be promoted. [American Brewing Co. v. City of St. Louis, 187 Mo. 267, 377, 86 S. W. 129.] In the case at bar the plaintiff had deposited only three hundred dollars of his money in the bank and there is no evidence that he was in immediate need of any of it when defendants sued and attached. Something is said in the brief filed

here in behalf of plaintiff about exempt property being levied on, citing Kelley v. Osborn, 86 Mo. App. 239, 244, but there is no allegation of that character or testimony tending to prove it. Giving the plaintiff the full benefit of all the testimony in his behalf we can get no more from it than that defendants honestly concluded they had been imposed upon him and the insurance company and that they would collect the full amount reasonably due them for their services. They brought a suit as was their right and in aid of the same instituted attachment proceedings in which they had to give a bond. They told plaintiff he could not get his money until they released it, which was true so long as the attachment remained. They told plaintiff, giving his testimony the most favorable construction, that he had committed a crime in settling and depositing the money in his own name, yet no threats were made to prosecute him.

In behalf of plaintiff is cited the case of Brown v. Worthington, 162 Mo. App. 508, 516, 142 S. W. 1082, wherein reference is made to duress of property as a sort of moral duress based on principles of equity and good morals, and we apprehend that if such principles were applied in this case it would be our duty to not only look to the conduct of the defendants in procuring the check for one hundred and fifty dollars but also we should not close our eyes to how plaintiff got into the case before us and how it is prosecuted. Plaintiff says it did not occur to him to bring this suit, but that a representative of the insurance company suggested it, brought the suit and filed a cost bond. Through this whole matter the insurance company has been the disturbing element, owing to its anxiety to get a low settlement for a serious injury to which no good defense could, as it was advised, be made. Had faith been kept with defendants this litigation would not have arisen and as it was suggested by and started at the instances of the insurance company, and the plaintiff appears to be such only in name we are not impressed with any claim for relief based solely on equitable grounds. For the purposes of this decision

we concede the law to be that the claim plaintiff had against the stone company was his and he could do as he pleased with it. [Curtis v. Metropolitan St. Ry. Co., 118 Mo. App. 341, 352, 94 S. W. 762.]

Much more might be said concerning the equities of the parties to and behind this litigation, but sufficient has been disclosed to justify the conclusion that the payment made by plaintiff was voluntary and that the trial court properly directed a verdict in defendants' favor.

The judgment is affirmed. *Farrington* and *Sturgis, JJ.,* concur.