## GERMAN v. UNIVERSAL OIL PRODUCTS CO.

### No. 9993.

Circuit Court of Appeals, Eighth Circuit.
March 30, 1935.

Cyrus Crane, of Kansas City, Mo., for appellant.

Charles H. Mayer, of St. Joseph, Mo. (R. R. Brewster, of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

## DONOHOE, District Judge.

In the year 1916, a bill in equity was filed by the Universal Oil Products Company, a corporation, against Standard Oil Company of Indiana, a corporation, setting forth an alleged infringement of a United States letter patent. After the issues were settled by the pleadings, a master in chancery was appointed to take the evidence, and report his findings of fact and conclusions of law to the court, but no final hearing was had.

Some fifteen years afterwards, there was filed in the case a stipulation, signed by the parties, seeking a dismissal of the action, and from which it appeared that a settlement had been effected by the parties outside of court. Thereupon the appellant filed in the action a pleading entitled "Ancillary Bill," in which he set forth in substance that he was a practicing lawyer; that his firm was employed to represent the plaintiff; that he had charge of the matter for his firm, and upon the dissolution of the firm acquired the interest of his partners; that the nature of the contract of employment was that of a joint adventure; that he had performed the contract on his part, and that

as a result of his skill and labor, the plaintiff derived large benefits and profits in a settlement which it effected with the defendant outside of court, and that he was entitled to an accounting of all such benefits, profits, and avails by reason of such joint adventure, and to a decree of court awarding to him his just share thereof The plaintiff and defendant thereupon filed their motion to strike, which, in effect, challenged the jurisdiction of the court. These motions were thereafter overruled by the trial judge, and thereupon the plaintiff and the defendant filed their separate answers to the so-called ancillary bill.

Before a hearing or trial was had, the trial judge entered an order disqualifying himself and withdrawing from the trial of the case. The Senior Circuit Judge thereupon appointed another judge in his stead. Thereafter, the appellant filed an amended intervening bill, in which he set forth in substance that he was a practicing lawyer, member of the bar of the court, and that his firm was employed in the year 1916 to represent the plaintiff in the patent suit heretofore referred to; that the intervener had charge of the matter for his firm, and had succeeded to all of the rights of his partners in the claim, which he set forth; that by the terms of the contract, it was agreed that the compensation of his firm should be partly paid in cash, and partly on a contingent basis; that he rendered to the plaintiff his services in the case as agreed, and fully performed the contract of employment; and that as a result of his labor and skill, which he employed in the prosecution and management of the suit, and the attack and finesse which was employed in connection therewith, and in the assembling of the evidence, the plaintiff was enabled to and did effect a settlement outside of court with the defendant, whereby it secured an amount in excess of $35,500,000, and the prayer was that the court determine the facts, ascertain the amount received by the plaintiff as a result of said litigation, and by its decree to adjudge to the intervener such an amount as would be fair and just and right under the terms of the contract, and to adjudge the payment thereof to the intervener by the plaintiff. To this amended intervening bill, the plaintiff filed a special appearance and motion to strike, which in due time was sustained by the trial court, and the so-called intervening bill dismissed. An appeal has been prosecuted to this court, in which the appellant asserts as error the action of the

trial court, for the reasons: (1) That the court had jurisdiction of appellant's intervening bill, and erred in sustaining the motion to dismiss for lack of jurisdiction; and (2) that his right to intervene was adjudged and determined by the first presiding judge before his disqualification, and consequently the judgment of the lower court violated the "law of the case" rule.

■ That federal courts recognize no lien on the cause of action in behalf of an attorney beyond that given by the local law seems to be well settled. Gregory v. Pike (C. C. A. 1) 67 F. 837; Cain v. Hockensmith Wheel & Car Co. (C. C. Pa.) 157 F. 992; Turner v. Woodard et al. (C. C. A. 1) 259 F. 737; Sun Life Assurance Company of Canada v. Casanova (C. C. A. 1) 260 F. 449; Cooper v. McNair (D. C. Fla.) 49 F.(2d) 778.

■ By the statute of Missouri, section 11716, R. S. 1929 (Mo. St. Ann. § 11716, p. 630), it is provided: "The compensation of an attorney * * * for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

It will be observed that by this section of the statute, while the attorney is given a lien, no provision is made for the enforcement thereof.

This situation is pointed out by the Supreme Court of Missouri in the case of Mills v. Metropolitan Street Railway Company, 282 Mo. 118, 221 S. W. 1, 4. That court has likewise held that in the absence of fraud or collusion, settlement made by the client extinguishes the cause of action; that since the cause of action was the property of the client, he had an absolute right to deal with his property as he saw fit in making a settlement, so long as the settlement was made in good faith, and this without regard to the wishes of his attorney. Curtis v. Metropolitan Railway St. R. Co., 118 Mo. App. 341, 94 S. W. 762. The interpretation of the statute by the Supreme Court of Missouri is binding on this court, and that court having held that no local statute provides for the manner of enforcement, such manner of enforcement necessarily becomes a matter of general law, unhampered by statute, which this court will decide for itself.

The method of enforcement, however, pointed out by that court, is persuasive. The court held: "In the absence of fraud or collusion, however, a settlement made by the client extinguishes the cause of action, and, being wiped out, it ceases to be the subject of prosecution. This is so because the cause of action is the property of the client and not the attorney, and he has an absolute right to make such settlement or adjustment of it, in good faith, as he thinks best regardless of the wishes of his attorney. Curtis v. Railway, 118 Mo. App. 341, 94 S. W. 762; Wait v. Railroad, supra [204 Mo. 491, 103 S. W. 60]. The lien is subject to this right, and, if on a percentage basis, is liquidated by the exercise thereof. After an honest settlement made by the client, his cause of action being thereby determined, the attorney, if his lien has been disregarded, is of necessity remitted to an independent action against the defendants. Yonge v. Transit Co., 109 Mo. App. 235, 246, 84 S. W. 184. Such independent action may be one at law for the value of the lien of which he is deforced, corresponding to the common-law action of trespass on the case. Taylor v. Transit Co., 198 Mo. 715, 730, 97 S. W. 155. Or possibly, if he so elects, the attorney may instead bring a suit in equity to foreclose his lien."

■ In this case, there is no claim of fraud in the settlement, and the action does not seek to have the settlement set aside. This court in the case of Campbell v. Golden Cycle Mining Company, 141 F. 610, 613, has clearly and concisely stated how far courts may go within their jurisdiction in a dependent action. I quote from the opinion: "But a cause of action in equity either to aid, restrain, or regulate an original action or suit of which the federal court has acquired jurisdiction, or the judgment or decree therein, or to determine claims to property in the custody of the court in such an original suit or action, is indispensable to the maintenance of a dependent suit. When a cause of action of this nature exists, and a court of equity has acquired jurisdiction of the subject and of the parties by means of it, it may undoubtedly draw to itself and decide all the issues between the parties, relative to the subject-matter, and determine the entire controversy. But without such a dependent cause of action it has no jurisdiction in equity, and, in the absence of divers-

ity of citizenship or a federal question, it can grant no relief."

When the settlement was made in this case, no judgment or decree had been entered. There was no property in the custody of the court. It seems quite clear that the court was wholly without jurisdiction to grant the relief demanded in this proceeding. Campbell v. Golden Cycle Mining Company, supra (C. C. A. 8); Brun et al. v. Mann (C. C. A. 8) 151 F. 145, 12 L. R. A. (N. S.) 154; Loy v. Alston (C. C. A. 8) 172 F. 90; Hoffman v. McLelland, 264 U. S. 552, 44 S. Ct. 407, 68 L. Ed. 845.

The cases cited by appellant, Wallace v. Franz (C. C. A. 8), 66 F.(2d) 457, and Byram v. Miner (C. C. A. 8) 47 F.(2d) 112, are not in point. In the Franz Case, the property was perhaps in the custody of the court. At any rate, the parties seem to have proceeded in the manner indicated without objection. The question of jurisdiction was not raised. At the time the Byram Case arose, and was determined, there was a statute in Minnesota (General Statutes of Minnesota 1927, § 5695) which expressly provided that the lien which was thereby created "may be established, and the amount thereof determined, by the court, summarily, in the action or proceeding, on the application of the lien claimant or of any person or party interested in the property subject to such lien, on such notice to all parties interested therein as the court may, by order to show cause, prescribe." It is earnestly asserted that the court, in its decision, disregarded this section of the statute, and based its holding on the authority of decisions of the Supreme Court of Minnesota, in cases which arose and were concluded prior to this enactment. A complete answer to this contention is that it was not necessary for this court to look beyond the plain language of this statute for its authority. Then, too, the record shows that the action of the court was based on the stipulation of the parties that the action should proceed as an action for equitable relief brought for that purpose.

The contention of counsel that wholly without regard to the statutory attorney's lien, and what remedies may be used to enforce that lien, the court had jurisdiction to protect the interests of the attorney as an officer of the court, and make such orders as would serve to do so, is we think without application. While it is true that courts generally are disposed to protect their officers in the collection of their fees and compensation, and this court is no exception to that rule, still courts will look to their jurisdiction for power and authority to afford such protection. Lacking in that jurisdiction, we are without power or authority to aid the appellant in this action.

The other question presented by the appeal remains for our consideration. It is asserted that the decision of the first presiding judge overruling the objections to the jurisdiction, became the law of the case; that the succeeding judge should have taken the case where it stood when the matter was transferred to him. The cases cited by counsel are not persuasive, must less decisive, of the principle for which he contends. In the case of Plattner Implement Company v. International Harvester Company (C. C. A. 8) 133 F. 376, 378, this court more clearly defined the rule announced in Shreve v. Cheesman, 69 F. 785, as permitting " 'most cogent reasons,' such as a certainty that a previous ruling was erroneous, that no conflict would arise and no injustice would result from disregarding it," as exceptions. The rule was also defined as a rule of "comity and necessity." The Supreme Court of the United States, in Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 488, 20 S. Ct. 708, 710, 44 L. Ed. 856, defines this rule of comity as follows: "Comity is not a rule of law, but one of practice, convenience, and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative. * * * Comity persuades; but it does not command. * * * It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views that comity comes in play and suggests a uniformity of ruling to avoid confusion, until a higher court has settled the law. It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other co-ordinate tribunals. Clearly it applies only to questions which have been actually decided, and which arose under the same facts."

If the first presiding judge was without jurisdiction, that is a cogent reason why his order should be disregarded. Then, too, the order was based on an entirely different and distinct cause of action than is involved here. A different state of facts was pleaded, and hence we think the rule contended for has no application.

The decision of the lower court is therefore affirmed.