## YOUNG, Respondent, v. RENSHAW et al., Appellants.

**St. Louis Court of Appeals, November 3, 1903.**

1. **Attorney's Lien on Judgment: NOTICE.** Under Laws 1901, page 46, section 2, which provides that if the attorney and client contract that the attorney shall receive a percentage of the amount recovered for his service, and the attorney serves a written notice thereof on the defendant, or proposed defendant, of such agreement, a lien attaches from the time of such service; service of the notice on the defendant's attorney is not sufficient.

2. ——. Prior to the Act of 1901, attorneys had no lien for their services on judgments obtained by them.

3. ——: REMEDY TO ENFORCE LIEN. In the absence of a statutory remedy for the enforcement of an attorney's lien on a judgment which he has obtained, for his client, under Laws of 1901, page 46, his remedy is not in equity, but at common law, and where the judgment is paid in disregard of his rights, he can move the court to set aside the satisfaction *pro tanto* and to award execution to the extent of his lien.

4. ——: NO RETROACTIVE FORCE. The Act of 1901, page 46, has no retroactive operation and does not attach to judgments rendered prior to the taking effect of the act.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer,* Judge.

REVERSED.

*Chester H. Krum* for appellants.

(1)   Before the statute, attorneys had no lien. Frissell v. Haile, 18 Mo. 18; Roberts v. Nelson, 22 Mo. App. 28; Alexander v. Railroad, 54 Mo. App. 66; Gulick v. Huntley, 144 Mo. 241.   (2)   Under the statute, the lien is only upon the claim, or cause of action, or upon the proceeds of any settlement. Laws 1901, p. 46, sec. 2. (3)   Under the statute the attorney can look only to his client, or to the defendant, who settles the claim in defiance of notice.   (4)   The statutes of New York, upon which section 1 of the act of 1901 is based, provide that the courts may enforce the lien by appropriate process.   There is no such provision in the Act of 1901. Civil Code, N. Y., sec. 66, p. 20; Chase's Pocket Code Civil Procedure N. Y., 1901.   Hence, there is nothing operative by way of remedy, except under section 2 of the Act of 1901—a suit against the defendant.

*Upton M. Young* for respondent.

STATEMENT.

On the fifteenth day of April, 1901, Emily M. Imboden, as heir at law of the estate of William Renshaw, recovered a judgment, in the circuit court of the city of St. Louis, for $4,867.55 against Alfred H. Renshaw, trustee under the will of William Renshaw, and the other heirs of the estate of William Renshaw which judgment was declared to be a lien on certain real estate in the city of St. Louis.   The cause was appealed to the Supreme Court, where the appeal, after reaching that court, was dismissed by the appellants.

On January 10, 1902, James C. Jones, Esq., presented in the circuit court, where the judgment was rendered, a power of attorney from Emily Imboden

authorizing him to enter satisfaction of the judgment decree. Thereupon Alex. Young, Esq., asked and obtained leave to file, and did file objections to the satisfaction of the judgment as follows (omitting caption):

"Now at this day comes Alexander Young and states to the court that he was the attorney for plaintiff in the above entitled cause, and obtained a judgment in her favor in said cause; that he did all the legal work in said cause for her pertaining to the cause of action set forth in the petition in said case, both before and after the institution of this suit, up to the time the appeals taken from the judgment of this court by the plaintiff and the defendants were dismissed in the Supreme Court of the State of Missouri; that said appeals were dismissed in said Supreme Court on the ninth day of January, 1902, and that the dismissal of said appeals leaves the judgment and decree of this court in this case in full force and effect. And the said Alexander Young further states and represents to the court that he did said work for plaintiff under a contract of employment, in writing with the plaintiff, by which she agreed to give to said Alexander Young, for his services as her attorney, a fee equal to thirty-three and one-third per cent of whatever might be recovered. And it was further agreed and stipulated in said agreement that neither party should settle or compromise said cause of action unless with the consent of the other. A copy of which said contract is hereto attached and marked 'Exhibit A.' and made part hereof. And the said Alexander Young further represents and shows to the court that the said judgment recovered by him for the plaintiff in this cause, principal and interest, now aggregates the sum of $5,100. That on the twentieth day of November, 1901, he duly served the defendants with notice of his said contract with the plaintiff, the said notice being duly accepted by defendants' attorney of record in this case. A copy of said notice, with acceptance of service thereof, is filed herewith and marked

'Exhibit B' and made a part hereof. And that no part of said fee has ever been paid.

"Wherefore, said Alexander Young says that under the laws of the State of Missouri, he has a lien upon the said judgment in this case for his fee. That he has reason to believe, and does believe, that the plaintiff and defendants herein are intending to defraud him out of his said fee, and all of them, living in distant States, are attempting to effect a settlement amongst themselves so as to deprive him, the said Young, of his said legal fees. And as a part of said attempt the plaintiff herein has given to James C. Jones a power of attorney, which has been filed with the papers in this case, authorizing and directing him to enter the said judgment in this court, rendered in her favor, satisfied. The said Alexander Young further states and shows to the court that in prosecuting the plaintiff's said cause of action, and preparing and getting same ready for trial, though not obligated so to do by his contract, he was compelled to and did lay out and expend a large amount of money. He further says that the plaintiff is wholly insolvent, having no other property or assets save and except the said judgment recovered for her by him, and to permit her to enter said judgment satisfied without paying him, the said Young, his fee, would be to deprive him altogether of his compensation for his service rendered, which would be utterly unjust and inequitable and contrary to and against the rights secured to him by the laws of the State of Missouri.

"Wherefore, the said Alexander Young earnestly protests and objects to said judgment being satisfied by the plaintiff or her attorney in fact until his fee is paid. And he further asks that this court, upon hearing of the evidence, will order and declare a lien for his fee against said judgment, and in the event the same is not paid within a reasonable time, then the said lien may be enforced by the proper order and execution of this court.

"ALEXANDER YOUNG.

"Sworn and subscribed to before me this fifteenth day of January, 1902.

"HENRY TROLL, Clerk."

With his objections he filed the following memorandum agreement marked "Exhibit A.:"

"This memorandum of agreement, made this twenty-second day of May, 1900, by and between Emily Morrison Renshaw Imboden of the city of New York, party of the first part, and Alexander Young, of the city of St. Louis, Missouri, party of the second part, witnesseth:

"That the said party of the first part has employed and retained the party of the second part as her attorney, to establish and recover her rights and interests in the estate of her grandfather, William Renshaw, Jr., lately deceased, and also to establish and recover any right or interest she may have in the estates of her great-grandfather, Joseph S. Morrison, who died in the city of St. Louis in September, 1851, and upon whose estate the said William Renshaw, Jr., administered. And the party of the second part, as such attorney, is hereby fully authorized and empowered to take such steps as he may deem necessary to accomplish the results herein contemplated. And for his services in her behalf the said party of the first part agrees to pay the party of the second part a compensation equal to one-third of whatever may be recovered, whether in money or property, or whether recovered through suit or compromise; but it is understood that no compromise shall be made unless both parties to this agreement consent thereto. And for the compensation herein provided for, the party of the second part agrees to give his best efforts to recover the said interests, and to take all legal steps necessary to establish and recover the same; it being understood and agreed that the party of the second part is not to receive any compensation for the services he may render in the matter referred to

unless something is received or recovered, and then only as herein provided.

"In witness of all which, the parties of the first and second part have signed this agreement, in duplicate, the day and date first herein written.

"EMILY M. IMBODEN,<br>
"ALEXANDER YOUNG."

He also filed the following other exhibit (omitting caption) marked "Exhibit B:"

"To the defendants in the above entitled cause.

"You are hereby notified that I have a contract in writing with the plaintiff in said cause, by which and whereby she agrees to give me, for my compensation as her attorney therein, one-third (or thirty-three and a third per cent) of whatever may be recovered for her in said case, whether the same be by settlement, compromise or judgment.

"ALEXANDER YOUNG.

"Received copy of foregoing the twentieth day of November, 1901.

"CHESTER H. KRUM,

"Attorney for Alfred H. Renshaw and other defendants."

The objections to the entry of satisfaction were sustained by the court, whereupon Alexander Young filed the following motion for execution (omitting caption):

"Now at this day comes Alexander Young and states to the court that he was the attorney for the plaintiff in the above entitled case, and as such obtained the judgment therein; that said judgment is in full force; that as such attorney for the plaintiff he had a contract with said plaintiff for a fee equal to one-third of whatever might be recovered, by judgment or otherwise; that the said judgment was recovered in this case for $4,876.55, and was rendered on April 8, 1901, with a lien against the property mentioned in the petition and decree; that his fee has never been paid, and that he

has a lien under the law for his said fee against said judgment, and that the defendants refused to pay it, that the plaintiff is insolvent and that he can only receive the benefit of the said lien by having an execution issue for the amount due him, as provided in the said contract, and of all of which the defendants have due notice, as heretofore shown, in the objections that he filed against the satisfaction of said judgment, which objections were sustained by the court.

"Wherefore he asks for an order requiring the clerk of this court to issue an execution, to his use, on said judgment for the amount due him.

"ALEXANDER YOUNG."

The motion was sustained and an execution was issued directing the sheriff to levy upon the lands, upon which the judgment of May 15, 1901, declared that Emily Imboden had a lien, for the payment of the amount found to be due Alexander Young under his contract with Emily Imboden.

On October 13, 1902, appellants filed a motion to quash the execution on the following grounds:

"That the execution is void for want of authority and jurisdiction in the court to issue it.

"That the execution was issued without authority from the plaintiff and not at her instance, but at that of Alexander Young, Esq., in his own behalf.

"That it is a special execution, not for the benefit of the plaintiff, or in accordance with the judgment or decree, but solely for the benefit of one who is not a party to the proceedings.

"That no lien is given to an attorney upon a judgment recovered by him, which is enforcible by such process.

"That under the statute, the attorney situated as is the beneficiary under the execution, has a remedy only by action against his client, or against the defendants.

"That the execution has been mistakenly issued, and after a full release from all liability to her had been given by the plaintiff to the defendants, to the knowledge of the mover of the execution and the court.

"That the judgment upon which the execution purports to be based is void for uncertainty as to the amounts to be contributed by the respective parties defendant, and is void as to the defendant Hobein, who is merely administrator, and is not adjudged to have received any portion of the estate.

"That there is no judgment in favor of the mover of the execution, and the writ as awarded was issued without notice to any party to the suit."

Due notice to the filing of the motion was served upon Alexander Young. The motion was taken up and heard on October 20, 1902. In opposition to the motion to quash, Alexander Young read in evidence exhibits "A" and "B" filed with his objections to the entry of satisfaction of the judgment.

The defendants read in evidence the judgment of April 15, 1902, and the following release and discharge of the judgment:

"Know all men by these presents, that good consideration me thereunto moving, I do hereby release and forever discharge from all and every liability to me, and from all claims, or demands by me or in my behalf, Frank A. Hobein, administrator of the estate of William Renshaw, deceased, and the estate by him administered, Alfred H. Renshaw, Vera Conine Renshaw, Emma Renshaw, Howard Price Renshaw, Paul Renshaw, Alfred Renshaw and Elizabeth Price Renshaw, and especially from a certain judgment in the sum of $4,876.55, obtained by me in cause No. 17743, circuit court, city of St. Louis, on the fifteenth day of April, 1901, of Emily M. Imboden v. Alfred H. Renshaw et al., and from all claims, demands or rights of action asserted by me, or accruing to me by reason of the ad-

ministration of the estate of Joseph S. Morrison by William Renshaw, or by reason of any rights, or interest in said estate accruing or belonging to Emily M. Renshaw or Morrison Renshaw.

"In witness whereof, I have hereunto set my hand and seal this third day of January, 1902.

    (Seal)                "EMILY M. IMBODEN.

"Signed in the presence of P. H. Delehanty.

"State of New York, County of New York, ss.

"Be it remembered that on this the third day of January, 1902, appeared before me Emily M. Imboden, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument, and acknowledged the same to be her free act and deed for the purposes therein mentioned.

    (Seal)               "P. H. DELEHANTY,

                   "Notary Public, 71 N. Y. Co.

"State of New York, County of New York, ss.

"I, Thomas L. Hamilton, clerk of the county of New York, and also clerk of the Supreme Court for the said county, the same being a court of record, do hereby certify that P. H. Delehanty, whose name is subscribed to the certificate of the proof or acknowledgment of the annexed instrument, and thereon written, was, at the time of taking such proof or acknowledgment, a notary public in and for the county of New York, dwelling in the said county, commissioned and sworn, and duly authorized to take the same. And further that I am well acquainted with the handwriting of such notary and verily believe that the signature to the said certificate of proof or acknowledgment is genuine.

"In testimony whereof, I have hereunto set my hand and affixed the seal of the said court and county, the third day of January, 1902.

    (Seal)          "THOMAS L. HAMILTON, Clerk."

The court overruled the motion to quash the execution. A motion for a new trial or rehearing was filed

which the court also overruled, whereupon the defendants appealed.

BLAND, P. J. (after stating the facts as above).—
1.   In 1901, the Legislature passed the following act:
"Section 1.   The compensation of an attorney or counselor for his service is governed by agreement, express or implied, which is not restrained by law.   From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosoever hands they may come; and can not be effected [affected] by any settlement between the parties before or after judgment.
"Sec. 2.   In all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto,* it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service[s] of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and can not be affected by any settlement between the parties either be-

fore suit or action is brought, or before or after judgment therein and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as herein above provided between such attorney and his client.''

Under the provision of the first section of the act, the lien of an attorney attaches when the suit is commenced or service of an answer containing a counterclaim is made. If the attorney and client enter into a contract that the former shall receive as compensation for his services, a percentage of the amount recovered or realized, and the attorney serves a written notice on the defendant or proposed defendant, of the agreement between himself and client, the lien attaches to the matter or cause of action from the date of the service of such notice, although no suit has been commenced, and if the claim is settled by the client with the defendant or proposed defendant, in disregard of the attorney's rights, after the defendant has been served with such notice, he will be individually liable to the attorney, as per his contract with his client. The respondent undertook to attach his lien under the provisions of the second section of the act by giving notice of his agreement with his client. The notice, we think, is sufficient in form and substance, but its service on Judge Krum, the attorney of defendants, was not a compliance with the statute, which expressly requires that the notice shall be served on the defendant or proposed defendant. Sappington v. Jeffries, 15 Mo. 628; Conway v. Campbell, 38 Mo. App. 472. For failing to give the notice required by the second section of the act, Young's lien did not attach until the suit was commenced, when it

attached under the provisions of section one.    The lien and its force and effect is therefore governed by the first section.  Under the provisions of this section, Young's lien attached to the judgment as soon as it was rendered and it was not affected by the settlement between the parties in disregard of his rights.

The New York statute, of which the first section of the Act of 1901 (so far as it goes) is almost a literal copy, provides that, "The court, upon the petition of the client or attorney may determine and enforce the lien." This clause gives the courts of New York jurisdiction, on the intervention of either the client or attorney after final judgment, to determine and enforce the lien.   No such power is directly conferred by the Act of 1901 on the courts of this State.   Before the Act of 1901 attorneys had no lien for their services in this State. Frissell v. Haile, 18 Mo. 18; Gulick v. Huntley, 144 Mo. l. c. 252; Roberts v. Nelson, 22 App. 28; Alexander v. Grand Ave. Ry Co., 54 Mo. App. l. c. 73. The act is, therefore, not an amendment of the common law, in respect to the same subject-matter, but is the creation of a new right that existed elsewhere at common law.

For some reason best known to itself, the Legisture omitted to prescribe any remedy for the enforcement of the lien when it attaches under section 1, of the act.    That the lien can not be enforced in equity against the judgment itself, we think is apparent from the nature of the thing to which the lien attaches.    The chancellor might find that there was a lien and decree its foreclosure, but there would be no res, no substance, upon which he could put his hand to enforce his decree. In such circumstances, the court will not let a new right perish for want of a remedy, but will look to the common law for an adequate remedy for the enforcement of the right.    At common law in England an attorney had a lien upon the fund or judgment, which he recovered, for payment as attorney in recovering the fund

or judgment, nominated ''a charging lien.'' Stokes on Liens of Attorneys, sec. 5, p. 85.

In respect to enforcing this lien, Lord MANSFIELD, in Welch v. Hale (1 Doug. 238), said: ''An attorney has a lien on the money recovered by his client for his bill of costs. If the money come to his hands he may retain it to the amount of his bill. He may stop it *in transitu* if he can lay hold of it. If he apply to the court they will prevent its being paid over till his demand is satisfied. I am inclined to go still further, and to hold that, if the attorney gave the notice to the defendant not to pay till his bill should be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt which has been assigned after notice. But I think we can not go beyond these limits.''

In Goodrich v. MacDonald, 112 N. Y. l. c. 163-4 EARL, J., speaking in respect to the common law lien of an attorney, said: ''It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. The lien was never enforced like other liens. If the fund was in the possession or under the control of the court, it would not allow the client to obtain it, until he had paid his attorney, and in administering the fund it would see that the attorney was protected. If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney. If paid after such notice in disregard of his rights, the court would, upon motion, set aside a discharge of the judgment and allow the attorney to enforce the judgment by its process so far as was needful for his protection. But after a very careful search we have been unable to find any case where an attorney has been per-

mitted to enforce his lien upon a judgment for his services by an equitable action, or where he has been permitted to follow the proceeds of a judgment after payment of them to his client."

In Mosely & Eley v. Norman, 74 Ala. 422, it was said, in respect to the lien of an attorney upon a judgment obtained by him for his client, that he was regarded as an equitable assignee of the judgment to the extent of his lien.

In Newbert v. Cunningham, 50 Me. 1. c. 234, it is said: "The attorney, being regarded as an equitable assignee of the judgment, has a right to the same remedial processes as his client to obtain satisfaction to the extent of his lien." Practically the same ruling was made in Commercial Telegram Co. v. Smith, 57 Hun 176.

In Terney v. Wilson, 45 N. J. 282; Williams v. Ingersol, 89 N. Y. 508, and in Weeks v. Circuit Judges, 73 Mich. 256, it was held that an agreement between an attorney and a client, that the former should have a lien for his service upon a judgment to be recovered, constituted a valid equitable assignment *pro tanto*.

In Filmore v. Wells, 10 Colo. 1. c. 233, the court said: "To declare him [the attorney] entitled to a lien upon the judgment, without permitting him, through such lien, to reach and control the subject-matter of the recovery, would be bestowing upon him the shadow, and withholding the substance."

In Patrick v. Leach, 17 Fed. 476, it was held by the United States Circuit Court, district of Nebraska, that, "Where an attorney at law has obtained a judgment for his client, on which he is entitled by law to a lien for his fees, and has perfected his lien in accordance with the provision of the law, he may enforce it, notwithstanding a compromise and settlement made by his client with the other party, although he has not made himself a party to the record."

In Tarver v. Tarver, 53 Ga. 43, it was held that an attorney may, after judgment proceed to enforce his lien by levy.

From these authorities we conclude that the remedy afforded by the common law to the attorney for the enforcement of his lien on a judgment, which he has obtained for his client, is, if the judgment is paid in disregard of his rights, to move the court to set aside the satisfaction *pro tanto* and to award execution to the extent of his lien, as was done in this case; that where the judgment or its proceeds are yet under the control of the court, it is the duty of the court, on motion of the attorney, to control the judgment or its proceeds until he has paid his fee. The learned circuit judge adopted this remedy and we approve his ruling.

Since writing the foregoing opinion our attention has been called to the fact that the contract upon which defendant bases his lien, and also the judgment he obtained for his client, were prior in date to the taking effect of the Act of 1901, supra. The act has no retrospective operation (sec. 15, art. 2, Bill of Rights), hence the plaintiff has no lien, legal or equitable, for the contract value of his services. Frissel v. Haile, Gulick v. Huntley, Roberts v. Nelson, Alexander v. Grand Avenue Railway Co., supra. His only remedy is on the contract against his client.

The judgment will have to be reversed and the execution quashed. It is so ordered. *Reyburn* and *Goode, JJ.,* concur.