# WAIT v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., Appellants; CROSS, Intervening by Motion.

## In Banc, May 30, 1907.

1. **ATTORNEY'S LIEN.** The Attorneys' Lien Act is constitutional. It is remedial, and will be liberally construed.

2. ———: **Without Notice.** If an attorney has a percentage contract with a client to collect a claim from another, then, after suit brought and service of summons on such other, whether the attorney gave notice in writing as provided by section 2 of the Attorneys' Lien Act or not, he has a lien upon his client's cause of action which cannot be affected by any settlement between the parties before or after judgment. And if the settlement be made without the attorney's consent before judgment, he need not press the suit forward to establish his lien, but an independent action lies against the settling defendant, not strictly to enforce the lien, but against him who deforced the lien, for the value thereof.

3. ———: **With Notice.** If such percentage contract exist and written notice be given as provided by section 2 of the act, then such agreement operates from the date of the service of such notice as a lien upon the claim or cause of action and upon the proceeds of any settlement without his consent, for such percentage, which lien cannot be destroyed or impaired by any settlement between the parties, either before or after suit, or before or after judgment.

4. ———: **Equity.** Where the circumstances are such that the law affords no adequate remedy, then the attorney's lien may be established in equity against any resulting fund (the fruits of the litigation) which may be within reach.

5. ———: **Judgment: Final and Not Final: Proceeding: Amount.** If a percentage contract exist and a judgment has been obtained which has not become a finality (for instance, where a motion for a new trial is pending or an appeal has been taken), a compromise settlement and release in which plaintiff's attorney is ignored and to which he does not assent, does not destroy his lien. But the release of the judgment may be opened up, on motion, in the nature of a special proceeding, and the discharge be set aside *pro tanto*, so as to let in his lien; and it may be enforced in the original case by an execution for the amount thereof, to avoid circuity of action. In such case, the settlement

Wait v. Railroad.

being honest, the amount or value of the lien is controlled by the settlement made by the client, and is not necessarily controlled by the amount of the judgment itself; but otherwise, if the judgment had become a finality. And the same remedy is open to the attorney where the judgment is compromised and settled without his consent after it has become final.

6. ———: **After Appeal: Motion to Affirm: Remedy.** Where defendant has after appeal taken settled with plaintiff who authorized a satisfaction of the judgment, ignoring his attorney with whom he had a percentage contract, notice of which had been served on the defendant, who has abandoned the appeal, the appellate court will not, upon motion or intervening petition of the attorney, engraft on the cause a special proceeding involving issues of fact (such as the existing of the agreement, the amount the attorney should recover, etc.) and afterwards set aside the release of the judgment made subsequent to the appeal, affirm the judgment to the extent of the lawyer's lien and enforce such lien by awarding execution. The attorney's course, if he does not wish to abide a determination of the appeal when the case is reached on the docket, is to move to dismiss the appeal, which will be sustained in case the judgment has been satisfied, and then pursue his remedy in the trial court.

7. ———: ———: **Failure to File Bill of Exceptions** within the time allowed is not indispensable to an appeal, nor does it authorize an advancement of the cause upon the docket. The record proper is still before the court for examination.

8. ———: ———: **Supreme Court: Original Jurisdiction.** The Supreme Court is, for most causes, a court of appellate jurisdiction. It has original jurisdiction in some matters, but it will not under its powers to issue and try certain original or extraordinary writs, entertain every motion or proceeding calling for a settlement of issues of fact, though they be both original and the remedy asked unusual.

9. ———: ———: **Appellate Jurisdiction.** If the judgment was for $8,000, and was compromised, and the only issue before the court is the one engrafted on to the case by the attorney's motion to affirm the judgment to the extent of the attorney's percentage part thereof, amounting to one-half or less, the amount in dispute does not, in any event, exceed four thousand dollars, and the Supreme Court is without appellate jurisdiction to try that motion.

Intervening Motion to Establish Attorney's Lien.

MOTION DENIED.

LAMM, J.—At the June term of the Clay Circuit Court, 1906, plaintiff recovered against the defendant railway company and one Slater a judgment for eight thousand dollars for personal injuries. Thereat defendants, unsuccessfully moving for a new trial and in arrest, filed their affidavit for appeal and an appeal was granted in due time.

Thereafter, on August 24, 1906, defendants filed in this court a certified copy of the judgment appealed from and of the order granting an appeal, but the cause yet rests on the general docket and has not been reached for assignment to a trial docket.

Thereafter, on April 9, 1907, at the April term of this court, there was filed by Pross T. Cross, the attorney of record for respondent Wait, a motion or intervening petition (hereinafter called a motion), on his own behalf, wherein the matters aforesaid were narrated; and it was further alleged that at the June term, 1906, of the Clay Circuit Court defendants obtained an order allowing them during the November term, 1906, to settle and file their bill of exceptions; that said term passed without a bill filed or leave extended; that on the 15th day of September, 1906, without the knowledge or consent of plaintiff's said attorney of record, plaintiff and defendants by their written agreement compromised and settled said judgment, and plaintiff authorized defendants' attorney of record to enter satisfaction of record. Said written agreement is set forth in said motion in haec verba and evidences a compromise settlement and discharge of said eight thousand dollars judgment for the sum of three thousand dollars in hand paid to plaintiff—its last clause running thus: "It is further expressly understood in making this settlement that said The Atchison, Topeka & Santa Fe Railway Company and its codefendant will pay all costs incurred in said suit aforesaid, and that they will further protect and hold the undersigned

(the plaintiff Wait) free from any attorney's liens which may exist against said judgment or against him in favor of the undersigned's (*sic*) attorneys in said suit." Movent further alleges that he was plaintiff's sole attorney in said suit and had a prior contract with plaintiff whereby he was to receive fifty per cent of whatever sum or sums might be collected from said claim or suit—which said contract is also set out *in haec verba,* bears date of 29th of January, 1904, and sets forth that Wait employs Cross to take charge of and collect said claim for personal injuries against Slater and said railway company; that Cross accepts the employment and pledges his best endeavors to collect said claim, and it is mutually agreed that for services to be rendered by him, he is to receive fifty per cent, as said, on the basis of no results to Wait, then, no fee to Cross — *i. e.,* that they were to be equal partakers of the joys as well as sorrows (the sweet as well as the bitter) of the contemplated venture — Cross being authorized to collect said claim by suit or otherwise as it appear best to him; that in December, 1903, he served notice in writing upon both said defendants, notifying them that he had been employed as Wait's attorney, and of the terms of his employment, etc.; and that on the 20th day of March, 1906, another written notice was served upon defendant railway company, setting forth the terms of the contract of employment by Wait and identifying the claim.

The motion goes on to state that the settlement between plaintiff and defendants was in violation of the rights of Mr. Cross. That under the terms of the aforesaid release, the contract between client and attorney, the notices served upon defendants and the Act of the Legislature of the State of Missouri, Laws 1901 p. 46 (the Attorneys' Lien Act), he, Cross, had a valid lien against said judgment and against the defendant railway company for the amount of one-half of said judg-

ment; that movent stands ready and asks leave to make proof of the foregoing allegations of fact, and he prays this court to take such steps as may be meet and proper to prevent a perpetration of a fraud upon his rights, and, if necessary, to appoint a commissioner to hear and take testimony, and that said judgment of the circuit court of Clay county be affirmed to the extent of Cross's interest therein, that he be allowed execution therefor against both defendants and for such other orders as the court may deem proper in the premises.

We are not favored with brief or suggestion by learned counsel in aid of, or in opposition to, the motion in hand; but, the Attorneys' Lien Act being silent on the remedy for the enforcement of the lien, and silent on the remedy "against him who deforced the lien, for the value thereof," and the legislation being new and remedial, moreover being of live interest to our brethren at the bar, it is deemed best to hand down our views in writing so that (peradventure) in course of time by a process of inclusion and exclusion, as points arise in judgment, the path of correct procedure may be blazed out.

It was said in Young v. Renshaw, 102 Mo. App. 173, by the St. Louis Court of Appeals, at its October term, 1903, that where a cause had advanced to judgment and the judgment was compromised over the head or behind the back of the attorney holding a contract with the judgment creditor for a percentage, then, in the absence of a statutory remedy for the enforcement of his lien, his remedy was not in equity but at common law; and that where the judgment is paid or discharged of his rights, one of his remedies was to move the court in which the judgment was entered to set aside the satisfaction *pro tanto* and to award execution to the extent of his lien; and that "where the judgment or its proceeds are yet under the control of the court, it is the duty of the court, on motion of the attorney, to con-

trol the judgment or its proceeds until he has [been] paid his fee.'' Having so written, it was discovered that the contract was entered into in May, 1900, that the judgment was entered in April, 1901; and it was pointed out that the Attorneys' Lien Act had no retrospective operation and was not in existence on the date of the contract or the date of the judgment; and, therefore, the attorney in that case had no remedy except the ancient one of a suit on the contract against his client. The point actually adjudged was that the Attorneys' Lien Act did not apply in that case, hence what was said by BLAND, P. J., on other questions became *obitcr*, valuable alone as the formulation of the views of a learned jurist, fortified by the concurrence of his brethren on that bench. However, in O'Connor v. Transit Co., 198 Mo. l. c. 644-5, this court, through FOX, J., approved of the reasoning in Young v. Renshaw.

In Conkling v. Austin, 111 Mo. App. 292 (1905), the Kansas City Court of Appeals had before it for review a case in equity in which attorneys sought to enforce their statutory lien against their client by impressing the lien on the fund resulting from successful litigation and which had been deposited in a bank by said client, and it was held by ELLISON, J., SMITH, P. J., and BROADDUS, J., concurring, that a bill in equity was a proper remedy in that particular case. But the law of that case must be read in the light of the peculiar facts there in judgment. Those facts are uncommonly complicated and not fully disclosed. One fact of controlling importance was that plaintiffs, as attorneys, had brought a suit at the instance of the defendant, Austin, a real estate agent, in the name of Peltier (a purchaser that Austin had procured) against certain executors for specific performance of a contract to convey their testator's real estate. The right to a conveyance being afterwards conceded, one was made and the suit dismissed. Not all but the lion's share of the

fees claimed by the attorneys arose in said suit to specifically perform, because the conveyance enabled Austin to consummate a deal then pending between Peltier and one Fisher for the same real estate in which there was a large profit accruing to Austin and in which profit the attorneys were held to have a percentage and to be entitled to share. A close reading of the case will show that (possibly) the only remedy the attorneys had, under the peculiar circumstances existing, was by a bill in equity to fasten a lien upon the fruits of their successful litigation, which, in that particular instance, had passed to their client, Austin, in a roundabout way and ultimately took form and substance as a bank deposit. Conkling v. Austin is not authority for the proposition that equity affords the only remedy nor is it authority for the proposition that it affords the usual remedy in cases predicated upon the Attorneys' Lien Act.

At its October Term, 1904, the St. Louis Court of Appeals again had the Attorneys' Lien Act under exposition in Yonge v. Transit Co., 109 Mo. App. 235. In that case Yonge had a contract with Mrs. Hagan to collect, on a percentage, a claim for personal injuries received at the hands of the Transit Company. Notice in writing of this contract was duly served. Yonge brought suit in pursuance of his employment and shortly thereafter the Transit Company settled with his client for $900. Thereupon Yonge sued the Transit Company for his percentage. It is there held that the attorney's lien under such circumstances attaches to the claim or subject-matter in dispute before, as well as after, a verdict or judgment, where the case arose under the second section of the Attorneys' Lien Act. It was further held that the action would lie notwithstanding the attorneys had not carried forward the original suit to a judgment for the amount of his percent-

age demand. GOODE, J., in deciding the case held that: "The statute in hand says in plain words that a defendant who settles with an attorney [with an *attorney's client?*] under the circumstances given, shall be liable to the attorney for that percentage of the proceeds which his contract with his client entitled him to receive. An express statutory liability of a legal character was thereby created, and as no particular or exclusive remedy was provided for its enforcement, it is enforceable by the usual common law remedy; that is, by an action at law corresponding to trespass on the case." Citing Sedg. Stat. & Const. Law (2 Ed.), p. 74, *et seq.,* and cases cited in the footnotes.

In Curtis v. Railroad, 118 Mo. App. 341, decided on April 2nd, 1906, the Kansas City Court of Appeals again had the Attorneys' Lien Act under review. In that case Miss Curtis made a contract with the law firm of Madden & Scholer to prosecute her claim for damages sounding in tort against the railway company on the halves — nothing won for her, no fee for them. Thereupon Madden & Scholer served a written notice upon defendant as provided by section 2 of the Attorneys' Lien Act; and thereafter successfully prosecuted a suit for her which culminated in a judgment for one thousand dollars. Thereupon, defendant interposing a motion for a new trial and in arrest, said motions were continued from February to October, 1904, and when they came on for hearing defendant introduced in evidence two written agreements signed by Miss Curtis. One stipulated that defendant's motion for a new trial should be sustained, that the judgment should be set aside and the cause dismissed. This agreement, drawn by defendant's attorneys, was based on a prior one drawn by defendant's claim agent and signed by Miss Curtis, in which she in terms dismissed the cause and directed "my attorney at law to appear for me and have order of dismissal made of record;" and the court

was thereby requested to dismiss the cause with or without the appearance of an attorney, she releasing the judgment in her favor. It seems Miss Curtis received a check for two hundred dollars in full release and discharge of the judgment, which check she cashed. All this was done without the consent or knowledge of Madden & Scholer; but the settlement was pursued and consummated by Miss Curtis on her own initiative and not on that of defendant; and the court, *nisi,* distinctly finding that defendant was not guilty of fraud, misrepresentation, concealment or deceit in procuring or inducing plaintiff to execute the stipulation and release, refused to sustain the motions for a new trial and in arrest, but overruled them. Thereupon defendant appealed to the Kansas City Court of Appeals, and the action of the court, *nisi,* in refusing to grant a new trial under the facts disclosed was approved and the judgment affirmed. In that case JOHNSON, J., reviewed the New York cases expounding a statute similar to the first section of our Attorneys' Lien Act. It was held that the motion for a new trial being pending and undisposed of, the judgment had not become a finality, and that under such circumstances the attorneys were not the equitable owners of one-half of the judgment; that the litigation being pending the plaintiff had the right to compromise her suit under the doctrine of Fischer-Hansen v. Railroad, 173 N. Y. l. c. 500, and so long as the settlement was an honest settlement, the statute did not deprive her of the control over her lawsuit, nor did it put in her attorneys' hands the power to block an honest settlement. It was held, further, that the acceptance of an honest settlement, by the client, liquidated the amount of the attorneys' fees. And further that: "When the parties make a settlement without obtaining this consent [the consent of plaintiff's attorney holding the percentage contract] and the full proceeds thereof are paid over to the client

of such attorney, three courses are open to the attorney: (a) He may follow the proceeds into the hands of his client or any other person who may have received them, or (b), he may recover his share of them from the defendant in a separate proceeding; . . . or lastly, (c) when the client's cause of action has merged into a judgment, the attorney may enforce a lien again the judgment itself — the *res* to which it attached — in order that he may have the benefit of the liens and remedies belonging to his security." And under the authority of the New York cases and the doctrine announced *obiter* in Young v. Renshaw, *supra,* it was held that one remedy open to the attorneys in that case was to move the court to set aside the satisfaction *pro tanto* and to award an execution to the extent of their lien. It was accordingly said in the Curtis case that plaintiff's attorneys may thereafter file their motion in the circuit court for the foreclosure of their lien, and, upon proof of the facts under consideration, they will become entitled to have an execution issued in their favor for the enforcement of the judgment in an amount sufficient to satisfy such lien. That as an action in equity for the foreclosure of the lien could go no further than to substitute the attorneys for their client as owners of the judgment to the extent required for the satisfaction of the lien, and as the final remedial process in such case would be an execution for the enforcement of the judgment, such proceedings would be unnecessarily clumsy and circuitous and therefore the remedy afforded by the common law to move to set aside the satisfaction *pro tanto* and award execution was a proper remedy.

Such was the state of the case law in Missouri expounding the Attorneys' Lien Act up to October, 1906, when two opinions were handed down by this court: O'Connor v. Transit Co., 198 Mo. 622; Taylor v. Transit Co., *Ibid,* 715. In both these cases the constitu-

tionality of the Attorneys' Lien Act was attacked and upheld by this court. Both cases were based on percentage contracts. Both of them were independent actions by the attorneys against a defendant who had settled pending suits, not yet merged into judgment, without the consent of plaintiff's attorneys. In one case (O'Connor's) notice had been given to the defendant of the existing percentage contract. In the other case no such notice had been given. In the O'Connor case, as said, Fox, J., approved the reasoning in Young v. Renshaw; in the Taylor case Young v. Renshaw is referred to, but the case was not reviewed; and both cases are authority for the proposition that before a case is merged into judgment so that the attorney's lien may leap over or attach to the judgment itself, said lien is to be taken as attached to the claim or cause of action, and that if the defendant settles such claim with the plaintiff, pending litigation, the non-consenting attorney who has been ignored and injured, has an action by his independent suit against such settling defendant. In the O'Connor case it was said that: ''It will be observed that this action is not strictly to enforce the lien provided by the statute, but is to recover the amount of such lien by reason of the failure of defendant to recognize the lien in its settlement with the plaintiff.'' [p. 642.] So in the Taylor case it was said that: ''Such an action would not be, strictly speaking, an action to enforce the lien, but an action against him who deforced the lien, for the value thereof.'' [p. 730.]

From these adjudications the following propositions (at least) may be considered settled:

(1) The Attorneys' Lien Act is constitutional. It is remedial and will be liberally construed.

(2) If an attorney has a percentage contract with A (''which is not restricted by law'') to collect a claim from B, then, after suit brought and service of summons on B, whether the attorney give notice in writing

as provided by section 2 of the act or not, he has a lien upon his client's cause of action which cannot be affected by any settlement between the parties "before or after judgment." [Taylor v. Transit Co., *supra.*] And if such settlement be made without the attorney's consent before judgment, he need not press the suit forward to establish his lien, but an independent action lies against the settling defendant, not, possibly, strictly to enforce the lien, but against him who deforced the lien, for the value thereof. [Yonge v. Transit Co., *supra;* O'Connor v. Transit Co., *supra;* Taylor v. Transit Co., *supra.*] (Whether an independent action can be maintained against a settling judgment defendant, has not been decided and this case does not call for such decision.)

(3). And if such percentage contract exist and written notice be given as provided by section 2, then such agreement operates from the date of the service of such notice as a lien upon the claim or cause of action and upon the proceeds of any settlement, for such percentage, which lien cannot be destroyed or impaired by any settlement between the parties, either before suit or after suit, or before or after judgment.

(4) Where the circumstances are such that the law (possibly) affords no adequate remedy, then an attorney's lien may be established in equity against a resulting fund (the fruitage of the litigation) which may be within reach. [Conkling v. Austin, *supra.*]

(5) And if a percentage contract exist and a judgment has been obtained which has not become a finality (for instance, where a motion for a new trial is pending and undisposed of or where an appeal has been granted) then a compromise settlement and release in which plaintiff's attorney is ignored and to which he does not assent does not destroy his lien. But the release of the judgment may be opened up on motion in the nature of a special proceeding and the discharge be set aside

*pro tanto* so as to let in his lien; and it may be enforced in the original case by an execution for the amount thereof to avoid circuity of action. [Curtis v. Railroad, *supra.*] In such case, however, the amount or value of the lien is controlled by the settlement made by the client, given an honest settlement, and is not necessarily controlled by the amount of the judgment itself. Otherwise, if the judgment had become a finality. [Curtis v. Railroad, *supra.*]

(6) If the reasoning of Young v. Renshaw, *supra,* as approved by Fox, J., in O'Connor v. Transit Co., *supra,* is to be followed (and no reason is apparent to us why it should not be followed when a case in point arises) then the same remedy set forth in the fifth hypothesis above, is open to an attorney where the judgment is compromised and satisfied without his consent after it has become a finality. See authorities cited, *arguendo* by BLAND, P. J., in Young v. Renshaw, *supra;* by BRACE, P. J., in Taylor v. Transit Co., *supra;* and by JOHNSON, J., in Curtis v. Railroad, *supra.*

It will thus be seen that, absent any statutory remedy, the courts have been most industrious in giving way to a benevolent inclination to seek and apply every remedy in point, even by the way of analogy, found in the common law; but we are now asked to engraft upon a cause appealed here a special proceeding involving issues of fact and try out those issues and afterwards set aside a release of a judgment made subsequent to the appeal, affirm the judgment to the extent of the attorney's lien and enforce such lien in this court by awarding execution. In our opinion, this is going a step too far and would be a vexing precedent to establish. Because:

(a) In the first place, defendants bring the case here by appeal. It has not been assigned to a trial docket and is, therefore, not before us for hearing and final determination. Conceding, as the motion states,

that no bill of exceptions was settled and filed, yet a bill of exceptions is not indispensable to an appeal, because error may appear on the face of the record proper; and we may not advance a cause and affirm a judgment because of the absence of a bill of exceptions. [Meier v. Hinkson, 146 Mo. 458.] Though appellant was given a time certain within which to file a bill of exceptions, the appeal is good though no bill of exceptions is ever filed (Cunningham v. Roush, 141 Mo. 640), the absence of the bill of exceptions merely restricting the scope of our search for error, as said, to the narrow bounds of the record proper. If then, we may not under such circumstances and for such reason affirm a judgment as an entirety, how can we affirm it *pro tanto* or in parcels, because of the absence of a bill of exceptions?

(b)    The Supreme Court is a court of appellate jurisdiction confined by the Constitution to the exercise of such jurisdiction only, that is, it sits as a court of errors, except in cases otherwise directed by the Constitution. [Art. 6, sec. 2, Const. of Mo.] The cases of which we have original jurisdiction are set forth in section 3 of the same article, reading: "The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari and other original remedial writs, and to hear and determine the same."

In construing the foregoing section of the Constitution, this court has held that a writ of injunction, though remedial, is not another original remedial writ in the constitutional sense, but that a writ of prohibition is an original remedial writ in such sense; and, without going into the philosophy of the matter, it may be said that it is quite out of the question to hold that we have jurisdiction to hear and determine the issues raised by the motion in this case — though it cannot be denied they smack of originality as well as remedy. The

phraseology of the Constitution is general and somewhat elastic; but not elastic enough to give us jurisdiction of every remedy and writ that in common parlance may be said to be original and remedial, and we deem it our bounden and obvious duty to restrict our original jurisdiction well within the wise and impassable limits of the Constitution.

Not only is there a constitutional barrier in the way of our hearing and determining the matter, but there is a statutory obstacle. For instance, if we graft onto the stock of the original appeal the new and independent issues raised in this proceeding between the attorney of record for respondent and the appellants, and if we adjudge a foreclosure of the attorney's lien and determine the value and amount thereof, then, what is the amount in dispute? If that amount be, as movent suggests, one-half of the judgment, it will be seen at a glance to be below our jurisdiction — Laws 1901, p. 107 — *a fortiori* is such amount below our jurisdiction if the amount in dispute be only one-half the compromise sum; or, if it be determined that Wait collected his half of the judgment and left the attorney's half uncollected, buttoned up in the seemingly unfriendly pockets of appellants, yet the result is no better — the amount in dispute is still below our jurisdiction.

(c) Nevertheless, if it be true that appellant has "killed" the issues on appeal, has accepted the judgment by compromising and obtaining satisfaction thereof, and thus lost the right to assign error as to the respondent, then the case ought not to lurk and linger here—having, at first blush, only the office of a delay and denial of justice to the attorney of respondent. So that, if such attorney fears, with this court retaining jurisdiction of the appeal, he may during the *interim* be precluded from proceeding, *nisi,* to enforce his lien, we see no reason why he may not test his right to lift

the hand of our mere shell or shadow of jurisdiction now resting on the case and by an apt motion raise the question of his right to dismiss the appeal, should he be so advised and elect to take that course. Such course is not without precedent. In Dulaney v. Buffum, 173 Mo. 1, plaintiffs, being cast below on demurrer to the evidence, appealed. After the appeal, they settled with two of the defendants who were sued with the others as joint tortfeasors. On motion here, the appeal was dismissed as to the settling defendants. Thereupon the other defendants filed their motion to dismiss the appeal as to them, suggested they were sued as joint tortfeasors and that after the appeal plaintiffs had settled with two of the wrongdoers and that such settlement operated as a release of all the defendants. This motion was sustained on the authority of Haggerty v. Morrison, 59 Mo. 324, in which latter case it was held proper practice for a discharged bankrupt to file his discharge here in order that this court might give it effect.

So, too, in In re Hutton's Estate, 92 Mo. App. 132, matters *dehors* the record were suggested in the appellate court as ground for the dismissal of an appeal. It is true that in that case the grounds were held bad and the motion was denied; but in considering the matter, SMITH, P. J., made a most learned and full review of the authorities on this obscure question of practice; and those cited by him, under given conditions, abundantly show that cases may be dismissed on appeal on a showing of facts *aliunde* the record; for instance, because of a settlement, because there was no longer a real controversy between the parties litigant, because the party appealing, who has adopted the judgment by taking advantage of it to settle, is not entitled to be heard on appeal to reverse the judgment he has paid off, and because courts, being eminently practical tribunals, will take a practical course to dispose of cases out of which

the life has gone. [See In re Hutton's Estate, *supra*, p. 136, *et seq.*]

We conclude the motion, in its present form, should be denied. It is so ordered.

All concur.