John DOWNS et al., Plaintiff-Respondents,

v.

William F. HODGE, and State Farm Mutual Insurance Company, Defendant-Appellant.

No. 24500.

Kansas City Court of Appeals.

Missouri.

Feb. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1967.

O. W. Watkins, Jr., Strop, Watkins, Roberts & Hale, St. Joseph, for appellant.

Don Pierce, Downs & Pierce, St. Joseph, for respondents.

SPERRY, Commissioner.

Plaintiffs are members of the bar of Buchanan County, and are partners engaged in the practice of law in St. Joseph, Missouri. Defendant is engaged in the business of writing casualty and other insurance in Missouri. Plaintiffs sued defendant and a Mr. Hodge for $1,000.00, same being the amount claimed due them for having represented Hodge in a suit by him against a Mr. Fender for personal injuries growing out of an automobile accident. Fender's liability was insured by defendant. Plaintiffs pleaded their contract with Hodge for a contingent attorney fee of thirty three and one third percent of any recovery obtained against Fender, either by judgment or compromise. They alleged their notification of defendant of their contract and of the eventual compromise settlement of the claim for $3,000.00 and that defendant had paid out the full sum of the above settlement to others than plaintiffs without having "protected" plaintiffs' claim. Plaintiffs later dismissed as to Hodge and obtained a jury verdict, and judgment thereon, against the insurance company which we will refer to herein as defendant. Defendant appeals.

Defendant urges error based on the court's failure to sustain its motion for a directed verdict at the close of all of the evidence, on the grounds that plaintiffs failed to make a submissible case of an attorneys' lien against State Farm Mutual Insurance Company; that attorneys' liens provided by the statute in Missouri confer no rights against the liability insurer of Mr. Fender.

Defendant also contends that the court erred in excluding the testimony of one of its attorneys regarding a statement made to him by one James Steele, an attorney associated with plaintiffs in the practice of law, who participated with plaintiff Pierce in the trial of the Hodge-Fender damage suit. The statement that Steele is said

to have made to defendants' attorney after the damage suit was tried and the jury found against Hodge, was that plaintiffs were no longer interested in the case and considered themselves well rid of Hodge.

Mr. Downs presented plaintiffs' case, which rests almost entirely on the testimony of Mr. Pierce and on documents contained in plaintiffs' files relating to the case of Hodge v. Fender, which case was tried by Mr. Pierce assisted by Steele, and of documents relating to the instant case.

There was evidence to the effect that plaintiffs' law firm, on April 27th, 1961, was contacted by Mr. Hodge regarding his claim for damages against Mr. Fender when the latter's automobile "rear ended" the Hodge automobile while it was standing behind a school bus on highway 36, east of St. Joseph; that Mr. Steele, who was an attorney employed on a salary basis by plaintiffs, procured the execution of a contract of legal employment of plaintiffs for their representation of Mr. Hodge on a contingent fee of thirty three and one third percent of any sums recovered for Hodge by plaintiffs whether by settlement or by judgment; that plaintiffs negotiated with defendant for a settlement of the claim but that no settlement was reached; that plaintiff took Hodge's statement as to the details of the collision; that they compiled a list of medical and other expenses of Hodge, interviewed witnesses, took depositions, obtained medical evidence of the nature and extent of his injuries, took pictures of the scene of the accident, prepared and filed a petition for damages, appeared in court at Chillicothe and "tried" the case. The evidence was to the effect that Mr. Pierce had charge of the case, from its inception and throughout the trial, but that he was assisted by Mr. Steele who prepared the pleadings and assisted in other ways under Mr. Pierce's direction. It was shown that plaintiffs either paid or became obligated to pay a number of items of expense in connection with the preparation, filing, and trial of the damage suit; that the jury's verdict was

adverse to Hodge; that plaintiffs filed a motion for a new trial; that Mr. Pierce presented the motion and argued it to the court; that Mr. Hodge was present at that hearing; that Hodge had told Mr. Pierce that he would like to consult Mr. Lance, another attorney; that Pierce consented; that Lance was in court when the motion for new trial was argued by Pierce but that he did not actively participate in the proceedings; that the motion was sustained. Plaintiffs investigated the case, filed all pleadings therein, took depositions, procured medical and other testimony, hired local counsel at Chillicothe, tried the case, filed and argued the motion for new trial and procured an order granting same, all with no assistance from anyone except Mr. Steele, who was their paid employee and who, at all times, acted under their supervision and direction.

Mr. Pierce stated that, prior to the trial, defendant offered $2,500.00 in settlement, which was rejected, and that eventually, it offered $3,000.00, which Hodge refused to accept; that, throughout the court proceedings, defendant was represented by attorneys Cleaveland & Collins; that the court's letter announcing that a new trial had been ordered was addressed to Downs & Pierce and to Mr. Collins, no one else; that Lance had told Pierce that Hodge had consulted him and that Pierce welcomed Lance's assistance in the case; that Lance wrote, asking for certain papers in the file, which were furnished; that Lance filed a motion for change of venue; that, a short time prior to the date the case was set for trial in Davies County, Lance wrote plaintiffs that he would see them within a few days regarding their participation in the trial of the case; that he next learned that the case had been settled and the entire proceeds had been paid out to Lance and Hodge; that plaintiffs had not been reimbursed for sums they had expended on the case, nor had they received any fee.

On cross examination Mr. Pierce stated that, after the adverse verdict was awarded, he told Hodge that plaintiffs would file

motion for a new trial and that it would probably be granted; that he did not tell Hodge that he would have nothing further to do with the case and washed his hands of it; that he did tell him that he made a poor witness; that he did not tell Lance that he was through with the case; that Lance asked for and was given documents from plaintiffs' files; that Lance informed him that he would confer with plaintiffs about their active participation in the next trial.

Mr. Cleaveland testified for defendant to the effect that Steele assisted Pierce in the trial of the case; that witness never negotiated with Steele, alone, or separately, regarding settlement of the case; that Pierce was in control of the case at all times. Defendant offered to prove by Cleaveland that he had a conversation with Steele, after the new trial was ordered; that Steele stated that plaintiffs no longer represented Hodge, and that they were well rid of him. The court denied the offer on the grounds that, while Steele was an associate of plaintiffs in their office, there was no showing that he had authority to make the statement, and that witness had stated that Pierce was, at all times, in control of the litigation.

The witness testified to the effect that Pierce told him, in the court room at Chillicothe, in the presence of the Circuit Judge, at the time when the motion for new trial was argued, that plaintiffs no longer represented Hodge, that their employment had been terminated, and that they were well rid of Hodge. He stated that, thereafter, witness dealt with Lance on questions and matters arising in the Hodge case.

On cross examination Cleaveland admitted that after the above conversation occurred, the judge wrote a letter to Downs & Pierce, informing them of his action; that the letter was addressed to Downs & Pierce alone with copies to witness and to Hess & Collins; that no other lawyer's name (Lance) was mentioned in the letter advising of the court's action. He admitted that, in February, 1964, (some two

years after the jury trial was held) he received a letter from Lance offering to settle the case for $6,500.00 and that copies went to Downs & Pierce and to Hess & Collins; that he had previously offered to settle the case with Pierce for $3,000.00, which offer was refused; that, in February, 1964, he settled the case with Lance for $3,000.00. He stated that he did not know whether plaintiffs had ever withdrawn as "attorneys of record"; that, while he represented Fender in this case, defendant insurance company was his client and paid him for his services.

Pierce was called as a witness by defendant and stated that Steele was employed on salary by plaintiffs during the above period, as attorney. Mr. Hodge testified to the effect that Pierce told him, after the jury trial was concluded, that he was through with the case and washed his hands of it, and that, later, Pierce repeated that statement; that witness told Pierce he would retain Lance as attorney; that, thereafter, he did not talk to Pierce; that he received $3,000.00 in settlement of the case.

Lance testified to the effect that Hodge requested him to represent him; that he rode to Chillicothe with Pierce who argued the motion for new trial; that, two weeks prior to settlement of the case, he sent plaintiffs and Hess & Collins, a copy of a letter written to Cleaveland proposing a settlement for $6,500.00; that he had frequently written Pierce asking for documents from his files; that he wrote Pierce shortly before the new trial was to be had at Gallatin to the effect that he would see him in St. Joseph to discuss Pierce's participation in the trial; that Pierce answered offering to help in the case. On cross examination it appears that Lance used the pleadings, witnesses and other data compiled and produced by plaintiffs in his handling of the case; that his role was the negotiation of a settlement for $3,000.00; that his activity otherwise was negligible, he having relied almost entirely on the work product of plaintiffs.

The parties agree that there is no Missouri decision directly on the question of whether an attorneys' lien may be impressed as against a liability insurer under the facts here involved.

■ The law relating to attorneys' liens has its roots in the common law, is founded on general principles of justice, does not depend on an express agreement, and is effectuated through the inherent power of courts over relations between attorneys and their clients. In some states there is an express statutory provision for a general retaining lien that supercedes the common law lien. 7 Am.Jur., Attorneys at Law, section 272. A statutory lien is cumulative, rather than exclusive of existing rights or remedies. 7 C.J.S. Attorney and Client, § 207.

Section 484, 130 R.S.Mo.1959, V.A.M.S., provides, in part, that from the commencement of an action or the service of an answer containing a counter claim, an attorney who appears for a party has a lien upon his client's cause of action or counter claim. Sec. 484.130 R.S.Mo.1959, V.A.M.S., provides that an attorney may contract with his client for a percentage of the recovery obtained in an action, and that, in an action therefor, upon service or notice in writing upon defendant of such agreement, stating his interest in such claim, said agreement shall operate from date of *service* as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorneys' portion or percentage, and cannot be affected by any settlement between the parties; and any party defendant who shall *thereafter* settle said claim without first obtaining the written consent of the attorney shall be liable for such attorneys' lien upon the proceeds of the settlement. The two above sections of our statutes were enacted, Laws, Mo.1901, page 46; Imboden v. Renshaw, 102 Mo. App. 173, 74 S.W. 701, 704. The court there held that, before the enactment of the statute, attorneys had no lien for their services in this state; that the act was not retroactive; that the lien there relied on was prior in date to the taking effect of the statute; and that, therefore, plaintiff attorney had no lien (in that case).

■ The court also held that, since the written notice was not served on defendant but, instead, was served on his attorney, the notice was not good and the lien never attached. The author of the opinion rests his conclusion upon two cited cases, both of which related to statutes concerning sureties. It is generally conceded that, in surety cases, there must be strict compliance with the governing statutes. However, since the court also held that the statute did not become effective until long after the attorney's contract was made it was ineffective to establish a lien, all else that was said was obiter and of no legal force. Wait v. Atchison, T. & S. F. Ry. Co., 204 Mo. 491, 103 S.W. 60–67. In the latter case the court held (p. 64), that the attorneys' lien statute is constitutional, remedial in nature, will be liberally construed, and that an attorney has a lien for his fees which attaches *when the suit is filed and service had,* whether or not notice in writing has been served. If settlement thereof be made without his knowledge, before or after judgment, his lien is not affected and he may maintain an action to enforce it against him who "deforced" the lien. The court stated that, absent a statutory remedy, "the courts have been most industrious in giving way to a benevolent inclination to seek and apply every remedy in point, even by way of analogy, found in the common law." While the intervening attorney in that case (Pross T. Cross) was denied the particular relief he sought, nevertheless the court's declarations of law, as mentioned, remain the law; and the court clearly indicated that a liberal policy should be followed so as to protect attorneys in enforcing their liens.

In Abbott v. Marion Mining Co., 255 Mo. 378, 164 S.W. 563, the court held that section 484.130 is plainly remedial in character, that its language should not be tor-

tured to defeat its purpose, and that it is applicable to contracts arising prior to its enactment. In Brookshire v. Metropolitan Life Ins. Co. (Mo.App.), 56 S.W.2d 817, 819, it was held that the statute is remedial and is to be liberally construed.

In Lawson v. Missouri & Kansas Telephone Co. (Mo.App.), 164 S.W. 138, this court (Trimble, J.), considered a case wherein the executrix of a deceased attorney sued defendant corporation for attorney fees alleged to be due because of services rendered by deceased in a tort action filed by him (and another attorney procured by him), but not brought to judgment until after his death. The judgment had been paid by defendant corporation to another attorney of record in the case, prior to the institution of suit by Lawson's executrix against defendant corporation.

This suit was based on the provisions of sec. 964, R.S.M.1909 (now sec. 484.130 R.S.Mo.1959). The court said (p. 141):

"[2, 3] By the terms of the statute every attorney who appeals has a lien upon the cause of action which attaches to the judgment and the proceeds thereof in whosesoever hands they may come. Section 946, R.S.Mo.1909; Bishop v. United Railways, 165 Mo.App. 226, loc. cit. 231, 147 S.W. 170. An attorney either at the beginning or during the progress of the case, is within the purpose and protection of the statute. Smith v. Wright, 153 Mo.App. 719, loc. cit. 721, 134 S.W. 683. The lien is on the cause of action from the commencement thereof. Section 964, R.S.Mo.1909; Conkling v. Austin, 111 Mo.App. 292, 86 S.W. 911; Taylor v. St. Louis Transit Co., 198 Mo. 715, loc. cit. 727, 97 S.W. 155; Wait v. Atchison, T. & S. F. R. Co., 204 Mo. 491, loc. cit. 501, 103 S.W. 60. And the sections creating a lien in favor of attorneys are remedial, and should be liberally construed. Wait v. Atchison, T. & S. F. R. Co., 204 Mo. 491, 103 S.W. 60; Bishop v. United Railways, 165 Mo.App. 226, loc. cit. 230, 147 S.W. 170.

"[4] Applying these principles to the case in hand, we see that Lawson, being one of the attorneys who brought the suit for Miss Allen, and who appeared therein for her, was entitled to be compensated for the services performed by him; that his right to compensation for the services he actually rendered is not defeated, even though his services were prematurely terminated by his death; that the services thus actually rendered by him are agreed to be worth $187.50, if his estate is entitled to recover anything. We see, also, that under the statute and authorities hereinabove cited Lawson obtained a lien for said services on the cause of action in that case, and that said lien attached to the judgment obtained therein. Said lien passed to the legal representative of Lawson upon his death. Whitecotton, Adm'x v. St. Louis & H. R. Co., 250 Mo. 624, 157 S.W. 776. *No notice of decedent's lien was necessary after suit was filed, and summons served, since he was one of the attorneys who brought the suit and appeared in said case. This was all the notice required.* Whitecotton Adm'x v. St. Louis & H. R. Co., supra, and cases cited." (emphasis ours).

In Whitecotton v. St. Louis & H. Ry. Co., 250 Mo. 624, 157 S.W. 776, 777, the Supreme Court (Lamm, J.) held that although no notice in writing of the contract was served on defendant at that time, as provided by sec. 965 R.S.Mo.1909 (now sec. 484.140), defendant had notice implied by the bringing of the suit and service of the summons, the attorney for plaintiff having appeared of record therein; and that no further notice was required. This was a personal injury action wherein attorney Whitecotton sued the Railway Company, defendant in the original action, for his fee based on a contingent contract with plaintiff. Without the attorney's knowledge, the Railway Co. had compromised, settled and dismissed the case, with his client's consent and paid her the full amount due under the compromise agreement. The

plaintiff was permitted to recover the amount due him under his contract, fifty percent of the amount for which the claim was settled.

■ However, defendant contends that the lien cannot be impressed as against a liability insurance carrier who is not, in fact, the defendant and who, in this case, now has no funds in its hand due its insured. Defendant admits in its brief that it is Fender's liability insurer. It says that fact does not make it a defendant and that service of notice of plaintiffs' contract of employment as attorneys in Hodge's claim against Fender was ineffective to perfect an attorneys' lien against either State Farm Mutual Company or its insured. We have held that the filing of the suit by plaintiffs and service of summons on Fender was sufficient notice to Fender of plaintiffs' lien.

■ As Fender's liability insurer, defendant admits in its brief that it was bound to defend Fender by reason of its contract. It was bound to do more than simply defend the suit; it was bound to pay and discharge all sums for which Fender might become legally liable by reason of tort actions growing out of the use and operation of his automobile (within the limits of the insurance coverage). It had the right to, and did, assume control of this litigation. It compromised, settled, and paid the plaintiff for his damages on terms that were satisfactory to defendant. For all purposes connected with this case of Hodge v. Fender, defendant was the alter-ego of Fender. It assumed to and did stand in the shoes of Fender. Defendant was Fender. It, therefore, became and was liable to do, in this case, what Fender was liable to do. Fender was legally liable to discharge plaintiff's attorney lien in full, thirty three and one third percent of all sums recovered by Hodge. Defendant failed in this duty. The jury has fixed defendant's liability at $1,000.00, and the court has entered judgment accordingly.

The parties agree that there is no Missouri decision wherein an insurer has been held directly liable for payment of an attorney's lien.

When this statute was enacted, in 1901, the automobile industry was in its infancy and the automobile casualty insurance business scarcely existed. There was no pressing need for it. Today, sixty seven years later, motor vehicles crowd the traffic lanes of a fast expanding highway system, and motor vehicle liability insurance is an important fact of life. It is essential for the financial protection of almost everyone. The law is ever growing. It never becomes stagnant. Its well established principles must be extended so as to encompass all situations to which they logically apply when sound reason and justice require. This is such a situation.

Defendant claims that the court erred in excluding testimony to the effect that Steele had stated, after the damage suit was tried, that plaintiffs, Downs & Pierce, no longer represented Hodge and were well rid of him. All of the evidence is to the effect that Steele was never a law partner of plaintiffs. Defendant's attorney in this case stated that Pierce was, at all times, in complete charge and control of the litigation on Hodge's behalf, and that he at no time dealt with Steele, separately or alone, in connection with any phase of the case. On behalf of plaintiffs it was shown that Steele was their salaried employee and that all acts he performed in the case were done under the direction and control of plaintiffs. He was merely a salaried employee, at most an associate, without authority to act independently so as to bind plaintiffs.

■ Steele was not an agent of plaintiffs and had no authority to make a binding statement such as is attributed to him, and thereby cut off their lien. Lawson v. Missouri & Kansas Telephone Co., supra, 164 S.W. 141. The statement alleged to have been made was hearsay and was in-

admissible for any purpose, under the record as made in this case.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.