## In re PAYLESS CASHWAYS, INC., Debtor.

### Bankruptcy No. 97–50543.

United States Bankruptcy Court, W.D. Missouri.

Nov. 3, 1998.

---

Jon J. Johnson, Johnson & Condon, Minneapolis, MN, for Commercial Union Insurance Co.

Dennis G. Muller, Muller & Muller, Kansas City, MO, for Matthew Scott Hall.

Benjamin Mann, Shelly Runion, Blackwell Sanders et al, Kansas City, MO, for debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Commercial Union Insurance Company (Commercial Union) and Dennis G. Muller, attorney for claimant Matthew Scott Hall, moved this Court to determine the subrogation interest of Commercial Union in the proceeds of a settlement of Mr. Hall's claim against debtor Payless Cashways, Inc. (Payless). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Commercial Union has no claim for subrogation against Payless at this time. I also find that Mr. Muller had a valid attorney's lien against the settlement proceeds, and that Payless had actual knowledge of that lien. Therefore, Payless is liable to Mr. Muller for 40 percent of the value of the stock it distributed to Mr. Hall on June 30, 1998.

## FACTUAL BACKGROUND

Matthew Scott Hall filed a proof of claim in this Chapter 11 bankruptcy case claiming unliquidated damages in the amount of $1,000,000 for a personal injury resulting from alleged negligence on the part of Payless. Commercial Union is the worker's compensation carrier for Mr. Hall's employer, Kamco Enterprises. In that capacity, Commercial Union paid the sum of $14,931.65 either to or on behalf of Mr. Hall as a result of Mr. Hall's claiméd injuries. There is no evidence before this Court that Payless had any knowledge of these payments.

Payless and Mr. Hall reached a settlement agreement that provided for the allowance of Mr. Hall's general unsecured claim in the amount of $150,000. The settlement agreement also provided for Mr. Hall's counsel to receive a contingency fee of 40 percent of any amount that Mr. Hall recovers.

Payless' confirmed Plan of Reorganization (the Plan) provides that allowed general unsecured claims are to be paid in common stock, with a value of approximately 24.4 percent of the claims, based on the assumption that the stock would have a book value of $9.19 a share at the time of distribution. Accordingly, Mr. Hall was entitled to approximately 3,982.59 shares of Payless stock. Of that 3,982.59 shares, Mr. Hall's attorney claims he has an attorney's lien for 1,593.04 shares, and Commercial Union claims it has a subrogation claim for 237.76 shares.

On August 12, 1998, Commercial Union asked this Court to determine its subrogation claim. Payless responded that it distributed 3,564 shares of common stock to Mr. Hall on June 30, 1998. Payless also stated that the distribution may constitute full satisfaction of Mr. Hall's claim depending upon the final allowance of remaining claims against the estate. Payless, therefore, claims that any entitlement of Commercial Union or Mr. Hall's attorney to a portion of the distribution is moot with respect to their right to receive a distribution from Payless rather than Mr. Hall.

Mr. Hall's attorney then supplemented the original motion to determine the subrogation interest of Commercial Union and asked this Court to direct Payless to cancel the issuance of the 3,564 shares of common stock sent to Mr. Hall on June 30, 1998, and to reissue the stock to Mr. Hall, Mr. Hall's attorney, and Commercial Union in the proportions that the Court determines is appropriate.

Mr. Hall's attorney attached a copy of the "Statement of Amendment of claim" to its supplement. The statement, signed by Mr. Hall's attorney, Dennis G. Muller, and dated June 12, 1998, provides:

> I hereby amend claim # 6251, dated November 11, 1997, to reflect an unsecured total claim of $150,000.00. By signing below, I authorize Poorman–Douglas Corporation, as the Court appointed Claims Agent, to update the official claim records to reflect this amendment and understand the claim will be allowed at that amount.[1]

There is a hand-written sentence at the bottom of the Statement of Amendment of Claim that states "Claimant will request the court to determine allocation of shares on distribution among the claimant, his attorney, and his worker's compensation insurance carrier."[2] There is no record in the Court's file of such a request being made prior to August 12, 1998, the date the motion to determine the subrogation interest of Commercial Union was filed.

## DISCUSSION

As to Commercial Union, this case presents the issue of whether a subrogation right survives distribution. There is no dispute that Commercial Union has a claim against Mr. Hall for a percentage of the recovery relative to the payments it made on behalf of Mr. Hall. And, had Commercial Union made its contribution known to Payless, it was entitled to have its claim subrogated to the rights of Mr. Hall. Section 509(a) of the Bankruptcy Code provides that "an entity that is liable with the debtor on a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such

1. Doc. # 1816 and attachment.

2. *Id.*

payment."[3] However, Commercial Union offered no evidence that it was liable to Mr. Hall. To subordinate a claim Commercial Union needed to prove that it and Payless were liable to Mr. Hall at the same time and on the same debt.[4] No such evidence was offered. Finally, any valid subrogation claim that Commercial Union might have would not survive the distribution of stock to Mr. Hall on June 30, 1998, if Commercial Union had never informed Payless of its claim. The hand-written notation on the Statement of Amendment of Claim cannot be said to give notice to Payless of the name of the carrier or the extent of its payment. Moreover, while the notation stated that "claimant will request the Court to determine allocation of shares among claimant, his attorney, and his worker's compensation carrier,"[5] the request was not made until after the distribution. Mr. Muller asks this Court to order Payless to cancel the issuance of the stock and reissue same among Mr. Hall, Mr. Muller, and Commercial Union. However, Payless has no ability to cancel the issuance of stock if Mr. Hall has already liquidated same. In essence, Mr. Muller is asking this Court to order Payless to pay Commercial Union its portion of the stock even though Payless has satisfied its obligation through the payment to Mr. Hall. This Court refuses to issue such an order. Commercial Union still has recourse against Mr. Hall, and can pursue any remedies it has against him.

As to Mr. Muller's claim for his attorney's fees, that claim is protected by state statute:

> The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.[6]

Thus, an attorney in Missouri has a lien for his fees which attaches when the lawsuit is filed and service had.[7] Moreover, if the lawsuit is settled without the knowledge of the attorney, the attorney's lien is not affected and he may maintain an action to enforce it against the defendant who settled the suit.[8] Mr. Muller signed the Statement of Amendment of Claim as the "agent of creditor" Michael Scott Hall. That alone was sufficient to inform Payless of his presence in the case. Moreover, Payless did not dispute Mr. Muller's contention that part of the settlement agreement involved the reduction of Mr. Muller's contingency fee arrangement with Mr. Hall from 50 percent to 40 percent. I, therefore, find that Mr. Muller had a valid attorney's lien against any proceeds of the settlement with Mr. Hall. I further find that Payless had knowledge of Mr. Muller's attorney's lien. Any distribution of stock should have been to Mr. Muller or to Mr. Muller and Mr. Hall jointly. Since Payless chose to distribute the stock directly to Mr. Hall in derogation of Mr. Muller's lien, Payless is liable to Mr. Muller for the extent of the lien. Mr. Muller is entitled to 40 percent of the value of the stock distributed to Mr. Hall on June 30, 1998.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**3.** 11 U.S.C. § 509(a).

**4.** *Photo Mechanical Serv., Inc. v. E.I. Dupont De Nemours & Co., Inc. (In re Photo Mechanical Serv., Inc.),* 179 B.R. 604, 619 (Bankr.D.Minn. 1995).

**5.** Doc. # 1816, Attachment.

**6.** Mo.Stat.Ann. § 484.130 (1987).

**7.** *Downs v. Hodge,* 413 S.W.2d 519, 523 (Mo.Ct. App.1967);

**8.** *Id.; Nelson v. Massman Const. Co.,* 120 S.W.2d 77, 89 (Mo.Ct.App.1938).